# Illinois Official Reports

## Appellate Court

*Phifer v. Gingher*, 2017 IL App (3d) 160170

| | |
|---|---|
| Appellate Court Caption | VANETTA L. PHIFER, Plaintiff, v. PHYLLIS M. GINGHER, Defendant-Appellee (Matthew D. Ports, Contemnor-Appellant). |
| District & No. | Third District<br>Docket No. 3-16-0170 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | January 18, 2017<br><br>March 30, 2017<br>March 30, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 13-L-242; the Hon. Katherine Gorman, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Matthew D. Ports, of Pfaff, Gill & Ports, Ltd., of Chicago, for appellants.<br><br>Adam P. Chaddock, of Quinn Johnston Henderson Pretorius & Cerulo, of Peoria, for appellee. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justice O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff filed a complaint against defendant seeking damages for "great pain and anguish both in mind and body" resulting from an automobile collision in 2012. During the production of pretrial discovery, defendant filed multiple motions to compel plaintiff to produce plaintiff's mental health records. Plaintiff resisted the discovery requests by asserting the records were privileged under the Mental Health and Developmental Disabilities Confidentiality Act. 740 ILCS 110/1 *et seq.* (West 2012).

¶ 2     Following an *in camera* review of plaintiff's mental health records, the court ordered plaintiff to produce the records for defendant's review on January 4, 2016. Plaintiff's counsel (contemnor) refused to produce his client's mental health records and requested to be held in indirect civil contempt to facilitate appellate review of the trial court's pretrial discovery ruling. Therefore, the trial court found contemnor in civil contempt. Contemnor appeals the trial court's contempt finding.

FACTS

¶ 3

¶ 4     On August 21, 2012, a vehicle operated by Phyllis M. Gingher (defendant) struck the back of Vanetta L. Phifer's (plaintiff) vehicle on Knoxville Avenue in Peoria, Illinois. On September 4, 2013, plaintiff filed a complaint alleging defendant negligently operated her vehicle and caused plaintiff to sustain "serious and permanent injuries." Plaintiff's complaint alleged that due to defendant's negligence plaintiff "suffered great pain and anguish both in mind and body and will in the future continue to suffer." On November 20, 2013, defendant answered plaintiff's complaint by denying she drove negligently on the date in question.

¶ 5     On November 19, 2013, defendant issued interrogatories that are relevant to this appeal. Defendant's interrogatory No. 10 requested plaintiff to "State the name and address of any physician or other health care professional who examined and / or treated you within the last 10 years and the reason for such examination and / or treatment." Plaintiff answered: "Unknown."

¶ 6     Defendant's interrogatory No. 11 asked if plaintiff was claiming "any psychiatric, psychological and / or emotional injuries as a result of this occurrence?" If so, in subparagraph (a) of defendant's interrogatory No. 11 defendant requested plaintiff to disclose the name of any health care professional rendering treatment for plaintiff's injuries. Plaintiff affirmatively responded to defendant's interrogatory No. 11 by listing Dr. Lisa Watt and Lisa Bresnahan. Subparagraph (b) of Defendant's interrogatory No. 11 asked whether plaintiff "suffered any psychiatric, psychological and/or emotional injury *prior* to the date of the occurrence" in 2012. (Emphasis added.)

¶ 7     Plaintiff's deposition took place on March 28, 2014. During this deposition, plaintiff disclosed that she sustained a closed head injury as a result of the August 21, 2012, collision. Plaintiff claimed that as a result of the head injury she sustained in the collision, she had current difficulties with memory and multitasking, headaches, crying spells, and fears associated with traveling in a vehicle and residing in the area near where the collision occurred. In addition, following the collision plaintiff suffered from lower professional confidence, slower thinking, lower energy levels, inability to focus, and recently suffered panic attacks.

¶ 8    According to her deposition testimony, plaintiff went to see Lisa Bresnahan for psychological issues after the 2012 collision. Plaintiff also stated Dr. Lisa Watt conducted cognitive testing on plaintiff as part of Watt's evaluation after the August 21, 2012, collision.

¶ 9    On September 25, 2014, the parties conducted the discovery deposition of Lisa Bresnahan, a licensed clinical social worker and counselor employed by the Saint Francis Medical Center in Peoria, Illinois. Bresnahan explained that she provided professional services to plaintiff for several months after the 2012 collision. According to Bresnahan, following the accident, plaintiff sought treatment for ongoing difficulties with multitasking and remembering details. Bresnahan stated plaintiff suffered from headaches, anxiety, and showed signs of depression.

¶ 10   The deposition of Dr. Lisa Watt, a neuropsychologist, also took place on September 25, 2014. Watt explained that after the 2012 accident, she gave plaintiff a multitude of tests to measure and gauge plaintiff's cognitive abilities. In terms of a diagnosis, Watt explained that plaintiff had many indicators supporting the conclusion that she suffered from a traumatic head injury. These indicators included headaches and cognitive inefficiency that caused difficulty with learning, recall, and a reduced attention span.

¶ 11   On November 5, 2014, defendant issued supplemental interrogatories. Defendant's supplemental interrogatory No. 1, requested plaintiff "State the names and addresses of all physicians, surgeons, or other healers of every description who have either examined or treated the Plaintiff at any time for mental health reasons, including, but not limited to anxiety and depression. Give the dates of all such examinations and periods of treatment in each case." In response, plaintiff indicated that she would obtain these past medical records to determine whether or not to produce them or file a privilege log.

¶ 12   Defendant's supplemental interrogatory No. 2 requested plaintiff to "State the names and addresses of all physicians, surgeons, or other healers of every description who have either examined or treated the Plaintiff in the 20 years prior to the occurrence for any physical ailment. Give the dates of all such examinations, the reasons for treatment, and periods of treatment in each case." Plaintiff objected to defendant's supplemental interrogatory No. 2 on grounds that the interrogatory was, *inter alia*, overbroad and irrelevant.

¶ 13   On February 17, 2015, defendant filed a motion to compel plaintiff to produce the names of both medical and mental health personnel that treated plaintiff prior to the collision in 2012. On March 12, 2015, the trial court granted defendant's motion to compel. Following this ruling, plaintiff disclosed the names and addresses of the following medical and mental health care providers: Dr. Edward Morris, Vivian Short, Moses Cone, Theresa Williams, Sara Rose, Dr. Leon Chandler, Carey Davies, Dr. Susan Ladd, Dr. Joseph Narins, Dr. Haywood, Dr. Stringer, and Dr. Veita Bland.

¶ 14   On July 22, 2015, defendant filed a second motion to compel seeking signed authorizations from plaintiff to facilitate the release of plaintiff's prior out-of-state mental health records. Subsequently, plaintiff filed her Illinois Supreme Court Rule 213(f)(1) and (2) disclosures on September 14, 2015. Ill. S. Ct. R. 213(f)(1), (2) (eff. Jan. 1, 2007). Plaintiff's Rule 213(f)(2) independent expert witness disclosure indicated Dr. Lisa Watt and Lisa Bresnahan would testify about "their personal knowledge of the facts at issue in this case, including their care and treatment of the Plaintiff, their prognoses, the damages incurred as a result of the incident, including past and future medical expenses, past and future pain and suffering, past and future disability and disfigurement, and other subjects discussed (or to be discussed) in their depositions and/or contained in their medical records."

¶ 15 The trial court held a hearing on November 17, 2015, on defendant's second motion to compel filed on July 22, 2015. During this hearing, plaintiff argued the medical and mental health records at issue in the second motion to compel were privileged records pursuant to the provisions of the Mental Health and Developmental Disabilities Confidentiality Act (Act). 740 ILCS 110/1 *et seq.* (West 2012). On this basis, plaintiff opposed the entry of an order compelling plaintiff to produce these mental health records pertaining to mental health treatment she received before the collision in 2012.

¶ 16 At the conclusion of the hearing, the trial judge granted defendant's second motion to compel dated July 22, 2015, and ordered production of plaintiff's mental health records related to treatment received prior to 2012. The court ordered production solely for the purpose of allowing an *in camera* review by the court. The court's written order dated November 17, 2015, instructed plaintiff to "sign authorizations for or otherwise produce to the Court for in camera review the medical and/or mental health records from the providers sought by Defendant; the Court to contact counsel following in camera review for determination of which documents, if any are discarded."

¶ 17 As ordered, plaintiff produced the out-of-state medical and/or mental health records for the purpose of an *in camera* review by the court. On December 16, 2015, the trial court conducted a telephonic hearing with the parties and reported the results and ruling of the court following the *in camera* inspection. The court's ruling is embodied in an order entered by the court on January 4, 2016. The order issued on January 4, 2016, required plaintiff "to produce to the Defendant within 28 days all of the records produced by Plaintiff to the Court for in-camera review and evaluation except for the first page of Exhibit 44A, being page 10 of 188."

¶ 18 Plaintiff's counsel refused to produce the records as ordered by the court on January 4, 2016. On February 3, 2016, defendant filed a third motion to compel, which included a request for sanctions for non-production by plaintiff. In response, plaintiff's counsel admitted the records were not timely produced and asked to be held in friendly contempt of the court for the purpose of seeking appellate review.

¶ 19 Consequently, on March 3, 2016, the trial court found plaintiff's counsel in "friendly"[1] contempt of court. The court assessed plaintiff's counsel (contemnor) a $100 fine in a good faith attempt to allow for appellate court review. On March 31, 2016, contemnor filed a timely notice of appeal of the trial court's contempt finding.

¶ 20                                        ANALYSIS

¶ 21 On appeal, contemnor challenges the trial court's March 3, 2016, order finding him in contempt of court. Before reaching the merits of the contempt order, we first resolve two procedural matters.

¶ 22 Contrary to contemnor's jurisdictional statement, defendant correctly points out that our jurisdiction in this appeal arises from Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). Clearly, Illinois Supreme Court Rule 304(b)(5) allows this court to consider an appeal from an "order finding a person or entity in contempt of court which imposes a monetary or other penalty." *Id.*

---

[1]The trial court's order fails to indicate which form of contempt contemnor has been held under. However, based on the facts of this case, we believe the court found contemnor in friendly contempt.

¶ 23 Next, both sides agree the records at issue qualify as mental health records that are normally privileged under the Act. However, the parties disagree about whether plaintiff waived her therapist/recipient privilege under the Act by placing her mental health at issue in this case. Therefore, we are called upon to determine whether, as a matter of law, the mental health records in this case fell within an exception to the protective privilege provided by the Act. Since we will be considering an issue of law, *de novo* review applies. *D.C. v. S.A.*, 178 Ill. 2d 551, 559-61 (1997).

¶ 24 We begin by considering the relevant portions of the Act itself as set forth below:

"(a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications.

(1) *Records and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense,* if and only to the extent the court in which the proceedings have been brought, or, in the case of an administrative proceeding, the court to which an appeal or other action for review of an administrative determination may be taken, finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm. \*\*\* [N]o record or communication between a therapist and a recipient shall be deemed relevant for purposes of this subsection, except the fact of treatment, the cost of services and the ultimate diagnosis unless the party seeking disclosure of the communication clearly establishes in the trial court a compelling need for its production." (Emphasis added.) 740 ILCS 110/10(a)(1) (West 2012).

The case law provides that party may waive his or her statutory privilege by introducing his or her mental health condition through "pleadings, answers to written discovery, a deposition, in briefs or motions, in argument before the court, or by stipulation." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 61 (2002).

¶ 25 Contemnor urges this court to determine that our supreme court's decision in *Reda* controls the outcome of this appeal and requires this court to set aside the finding of contempt. In *Reda*, the plaintiff brought a medical malpractice action against the hospital and doctors following the development of an acute thrombosis and an apparent stroke. *Id.* at 50-51. During discovery in *Reda*, plaintiff's counsel refused to comply with the trial court's pretrial discovery order requiring plaintiff to produce his psychiatric records citing privilege under the Act. *Id.* at 49-50. As in the case at bar, in *Reda*, the trial court held plaintiff's counsel in friendly civil contempt and plaintiff challenged this finding of contempt. *Id.* at 50.

¶ 26 Our supreme court was called upon to determine whether the plaintiff in *Reda*, placed plaintiff's mental health at issue. See generally *Reda*, 199 Ill. 2d 47. In *Reda*, the complaint alleged the plaintiff " 'sustained injuries of a personal and pecuniary nature' " attributable to defendant's negligence and caused damages including, but not limited to, loss of society,

companionship, and affection. *Id.* at 50. When asked to describe his injuries for purposes of interrogatories, the plaintiff in *Reda* answered that he suffered severe injuries to his leg that resulted in disability, disfigurement, and pain and suffering. *Id.* at 51. The plaintiff also said he suffered a stroke, heart problems, and kidney problems. *Id.* Further, the depositions of the plaintiff and his wife in *Reda* disclosed "headaches, loss of memory, decline in comprehension, difficulties in performing daily activities, and changes in personality." *Id.* at 57.

¶ 27　　Our supreme court reasoned a section 10(a)(1) exception to the Act "applies only when a party affirmatively places his or her own mental condition at issue." *Id.* at 59. Our supreme court held that a neurological/physical injury such as a stroke and/or other brain damage does not *necessarily* create psychological damage or automatically place the plaintiff's mental health at issue. Based on the allegations in the complaint in *Reda*, and the statements made during discovery, the court concluded the plaintiff did not actually place his mental condition at issue by making claims for damages due to a diminished physical capacity to perform daily activities, loss of society, companionship, and affection in his complaint or by discussing headaches, loss of memory, decline in comprehension, difficulties in performing daily activities, and changes in personality during depositions because such alleged injuries were physical/neurological in nature and could be separated from psychological damage. *Id.* at 57-58.

¶ 28　　The facts in *Reda* are distinguishable from the instant case. Here, plaintiff did not restrict her damage claims to physical/neurological injuries. Instead, plaintiff's original complaint alleged that "she suffered great pain and anguish both in *mind* and body and will in the future continue to so suffer." (Emphasis added.) Unlike the plaintiff in *Reda*, in response to interrogatories, specifically, interrogatory No. 11, plaintiff affirmatively stated she was claiming *"psychiatric, psychological* and/or emotional injuries" as a result of this occurrence. (Emphasis added.) Based on the unique record in this case, we conclude plaintiff affirmatively placed her own mental condition at issue.

¶ 29　　We recognize plaintiff's own deposition responses and her Rule 213(f)(2) disclosures place less emphasis on the damage to her mental health in comparison to the broader allegations of her complaint and her unambiguous affirmative answer to defendant's interrogatory No. 11. However, during her discovery deposition, plaintiff described her injuries resulting from the August 21, 2012, occurrence to include anxiety in addition to memory loss, difficulty multitasking, headaches, frequent episodes of crying, and irrational fears interfering with her ability to drive or ride in a car and feel safe in the area where she lived.

¶ 30　　Moreover, plaintiff's Rule 213(f)(2) disclosure indicated that her two expert witnesses, Dr. Watt and Ms. Bresnahan, would offer testimony about "other subjects discussed (or to be discussed) in their depositions and/or contained in their medical records." Our careful review of the depositions and medical records from these two experts document cognitive testing and treatment plaintiff received from these experts for anxiety, lowered professional confidence, panic attacks, and depression.

¶ 31　　Thus, we conclude the case at hand is factually distinguishable from *Reda*. Therefore, the trial court correctly determined plaintiff placed her present and past mental health status at issue, thereby waiving her privilege under the Act. Without discussing the details revealed in plaintiff's mental health records in this public forum, we further conclude, based on our careful

review of the same records subject to an *in camera* review by the trial court, that the trial court correctly concluded the records at issue are relevant, probative, and not unduly prejudicial as required under the Act. 740 ILCS 110/10(a)(1) (West 2012).

¶ 32   Contemnor alternatively argues that even if this court agrees with the trial court's finding that plaintiff initially placed her mental health at issue, plaintiff has now withdrawn her claims for damages solely attributable to the mental health injuries she sustained in 2012. Conversely, defendant asserts plaintiff's verbal assurances regarding her intent to withdraw mental health claims before trial are both vague and insufficient.

¶ 33   During arguments in the trial court and before this court on appeal, contemnor consistently stated that plaintiff previously stepped back from all claims involving mental health damages beyond those physical damages allowed under the rationale of *Reda*. Yet, a lack of clarity still exists regarding whether plaintiff has made a definitive election to abandon all claims for mental health damages. For example, in this appeal, contemnor's reply brief asserts "Plaintiff Has, *and Continues to Have*, the Right to Waive Claims for Mental Health Injuries to Avoid Disclosure of Her Prior Mental Health Care." (Emphasis added.) This statement of the issue implies contemnor perceives that plaintiff retains an unexecuted future option to remove or waive the mental health damages that are currently on the table and at issue.

¶ 34   Moreover, contemnor has not directed this court to any agreed order, stipulation, or document of record confirming plaintiff's decision to abandon damages based on the psychiatric, psychological, and/or emotional injuries addressed by defendant's interrogatory No. 10. Nor has plaintiff amended her affirmative response to this interrogatory as required by Rule 213(i). Ill. S. Ct. R. 213(i) (eff. Jan. 1, 2007). Therefore, we reject the contemnor's argument that his client clearly expressed a desire to forego her previous claims for mental health damages.

¶ 35   For the foregoing reasons, the trial court's March 3, 2016, order finding contemnor in contempt of court is affirmed.

¶ 36                                    CONCLUSION
¶ 37   The judgment of the circuit court of Peoria County is affirmed.

¶ 38   Affirmed and remanded.