# Illinois Official Reports

## Appellate Court

---

### *Sparger v. Yamini*, 2019 IL App (1st) 180566

---

| | |
|---|---|
| Appellate Court Caption | JEFF SPARGER, as Father and Next Friend of KIERSTEN SPARGER, a Minor, Plaintiff-Appellant, v. BAKHTIAR YAMINI, M.D., and THE UNIVERSITY OF CHICAGO MEDICAL CENTER, an Illinois Corporation, Defendants-Appellees (TIMOTHY I. McARDLE, Contemnor-Appellant). |
| District & No. | First District, First Division<br>No. 1-18-0566 |
| Filed | October 28, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-12475; the Hon. John Ehrlich, Judge, presiding. |
| Judgment | Reversed and remanded. Contempt order vacated. |
| Counsel on Appeal | Timothy I. McArdle and Michael S. McArdle, of Nolan Law Group, of Chicago, for appellants.<br><br>Mark M. Brennan, Kenneth C. Hoffmann, and Anthony J. Longo, of Brennan Burtker LLC, of Chicago, for appellees. |
| Panel | JUSTICE WALKER delivered the judgment of the court, with opinion.<br>Justices Pierce and Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff Jeff Sparger, on behalf of his daughter Kiersten Sparger, filed a complaint against defendant physician, alleging the physician's negligence in repairing a spinal fluid leak following Kiersten's spinal cord surgery resulted in Kiersten developing meningitis. A neuropsychologist evaluated Kiersten to determine if the meningitis affected her "cognitive, emotion, and behavioral presentation." The neuropsychologist's report stated that Kiersten presented signs and symptoms consistent with a traumatic brain injury. Specifically, Kiersten exhibited several cognitive impairments and had a change in personality causing her to become emotionally volatile. Defendant requested Kiersten's medical records from two hospitals she visited prior to her surgery. Plaintiff refused to disclose the records, arguing they were privileged pursuant to the Mental Health and Developmental Disabilities Confidentiality Act (Mental Health Act) (740 ILCS 110/1 *et seq.* (West 2018)). Defendants filed a motion to compel, contending that because the report concluded Kiersten's injury affected her emotional presentation, plaintiff placed Kiersten's mental health at issue and therefore needed to disclose Kiersten's mental health records. After an *in camera* inspection of the records, the trial court granted the motion to compel. Plaintiff's counsel respectfully declined to disclose the records and was held in friendly contempt to facilitate appellate review.

¶ 2 We find the trial court erred in granting defendants' motion to compel because plaintiff did not place Kiersten's mental condition at issue by claiming brain damage. The information plaintiff seeks to protect is not relevant or probative and is unduly prejudicial as it does not pertain to Kiersten's conduct and actions at the time of her injuries.

¶ 3 I. BACKGROUND

¶ 4 On December 22, 2016, plaintiff, as father and next friend of Kiersten, a minor, filed a medical negligence complaint against defendants, Bakhtiar Yamini, M.D. (Dr. Yamini), and the University of Chicago Medical Center (U of C Medical Center) (collectively, defendants).

¶ 5 In the complaint, plaintiff alleged that on March 30, 2015, Dr. Yamini, an employee of the U of C Medical Center, performed surgery on Kiersten, "including a lumbar laminoplasty for untethering of the spinal cord with microdissection and neuromonitoring." On April 27, 2015, Dr. Yamini again saw Kiersten because Kiersten's surgical wound was leaking spinal fluid. Dr. Yamini confirmed that the wound was leaking and instructed his staff to "overstitch" the wound. Dr. Yamini discussed the need to admit Kiersten but informed Kiersten's parents that due to a nursing strike, Kiersten could not be admitted. For the next several days, a pouch developed at the wound site, Kiersten developed a fever and significant neck pain, and she was eventually taken to the U of C Medical Center on May 13, 2016, where Dr. Yamini surgically repaired the leak. The complaint alleged that Dr. Yamini's 14-day delay in repairing the leak was a significant deviation of the standard of care, defendants were negligent, and as a direct and proximate result, Kiersten "developed infectious meningitis, and the serious sequalae thereof, and suffered injuries of a personal and pecuniary nature, which are permanent and continuing in nature."

¶ 6 Defendants denied they were negligent and careless in repairing the wound.

¶ 7 During discovery, defendants issued an interrogatory to plaintiff, seeking the names and addresses of all physicians, specialists, therapists, clinics, and similar personnel or facilities

who examined or treated Kiersten for her injuries. In response to the interrogatory, plaintiff identified Dr. Kathy Borchardt, a neuropsychologist, as one of the physicians who examined Kiersten. Dr. Borchardt issued a report of Kiersten's evaluation that plaintiff provided to the defendants.

¶ 8　　The report indicated that Kiersten was referred to Dr. Borchardt for a "neuropsychological evaluation to determine whether Kiersten's recent bout with meningitis has affected her cognitive, emotion, and behavioral presentation." Dr. Borchardt interviewed Kiersten, who stated that since her bout with meningitis, she "becomes more frustrated and angry than she used to" and "has lost friendships because of her moods and outbursts." Kiersten's parents were also interviewed and stated that since the meningitis, "Kiersten's reading comprehension appears compromised, and she has become forgetful in general" and "has also experienced a change in personality in that she becomes moody, crabby, and emotionally volatile."

¶ 9　　Dr. Borchardt conducted several tests on Kiersten and concluded that:

> "Kiersten presents with signs and symptoms consistent with a traumatic brain injury. Specifically, Kiersten exhibits the following cognitive impairments: decreased attention and sustained concentration, irritability, sensory sensitivity, decreased cognitive processing speed, auditory processing delays, impaired immediate and working memory to auditory and visual stimuli, sensory processing-modulation-integration deficits, impaired mental stamina, and social interaction deficits. Given her medical history, it is likely that her impaired cognitive presentation is the result of her recent episode of meningitis in May of 2015."

¶ 10　　Also in response to the interrogatory, plaintiff indicated that Kiersten had been treated for her injuries at Edward Hospital and Du Page Medical Group. Defendant issued subpoenas to both hospitals for Kiersten's medical records. Both hospitals responded that they were unable to release the records without special authorization because the records included Kiersten's mental health information. Plaintiff later authorized the release of the medical records from both hospitals to plaintiff's counsel so that counsel may assert privilege where appropriate. Subsequently, counsel asserted privilege pursuant to the Mental Health Act and forwarded the records to the defendants with "lined redactions throughout the record pertaining [to] psychological history, assessment and medication" and "entirely withheld the records of [Kiersten's] hospitalization from November 10, 2014." Counsel also submitted the records to the trial court for an *in camera* inspection.

¶ 11　　Defendants filed a motion to compel disclosure of Kiersten's medical records from both hospitals. Defendants argued that because Dr. Borchardt's report concluded that Kiersten's injury affected her cognitive, emotional, and behavioral presentation, plaintiff placed Kiersten's mental health at issue. Defendant asserted entitlement to the medical records from both hospitals to determine what Kiersten's cognitive, emotional, and behavioral presentation was prior to the occurrence of her injury.

¶ 12　　Plaintiff filed a motion to bar discovery of the records and argued that a plaintiff does not place her mental condition at issue by merely claiming a neurological injury.

¶ 13　　On February 20, 2018, the trial court found that plaintiff placed Kiersten's mental condition at issue and must disclose the records. The trial court read, in open court, portions of the records for which plaintiff sought to assert the Mental Health Act's privilege. We will not recite those portions of the records on this public forum. Based on those portions, the trial court found that Kiersten displayed "emotional symptomatology" prior to developing meningitis.

Because Dr. Borchardt's report indicated emotional deficits following Kiersten's development of meningitis, the court ordered the medical records to be fully disclosed, without redactions, to determine whether Kiersten's premeningitis emotional symptoms were relevant to claims of postmeningitis cognition, memory, processing, and social interaction deficits.

¶ 14 Plaintiff's counsel respectfully declined to turn over the records. The trial court held counsel in friendly contempt and imposed a fine of $100 to facilitate appellate review. Plaintiff's counsel advised the court that in reciting the portions of the records to which the privilege was claimed, defendants received information protected by the Mental Health Act. Accordingly, plaintiff requested that the transcripts of the hearing and the records be sealed. The trial court granted the request. Plaintiff filed this appeal. During oral argument, plaintiff stipulated that he does not seek compensation for emotional injuries Kiersten suffered as a result of the meningitis.

¶ 15                                          II. ANALYSIS

¶ 16 On appeal, plaintiff contends that the trial court erred in ordering the production of Kiersten's mental health records and in holding plaintiff's counsel in contempt for refusing to produce the records. Where an individual appeals a finding of contempt for violating a discovery order, the contempt finding is final and appealable, presenting to a reviewing court the propriety of the discovery order. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002). A contempt proceeding is an appropriate method for testing the correctness of a discovery order. *Id.* "If the discovery order is invalid, then the contempt order, for failure to comply with that discovery order, must be reversed." *In re D.H.*, 319 Ill. App. 3d 771, 773 (2001). Plaintiff's counsel argues that the trial court's discovery order is invalid because the records are privileged under the Mental Health Act and no exception applies. The applicability of a statutory evidentiary privilege, and any exceptions thereto, are matters of law subject to *de novo* review. *Reda*, 199 Ill. 2d at 54.

¶ 17 The Mental Health Act provides that "[u]nless otherwise expressly provided for in this Act, records and communications made or created in the course of providing mental health or developmental disabilities services shall be protected from disclosure regardless of whether the records and communications are made or created in the course of a therapeutic relationship." 740 ILCS 110/3(a) (West 2018). Under the Mental Health Act, " '[r]ecord' means any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient concerning the recipient and the services provided." *Id.* § 2. Communication "means any communication made by a recipient or other person to a therapist [or] in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient." *Id.* Recipient means "a person who is receiving or has received mental health or developmental disabilities services." *Id.* Therapist means "a psychiatrist, physician, psychologist, social worker, or nurse providing mental health or developmental disabilities services." *Id.*

¶ 18 Section 10(a) of the Mental Health Act lists exceptions to the evidentiary privilege that permit disclosure. Section 10(a)(1), at issue in this case, provides that

> "[r]ecords and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense, if and only to the extent the court in which the proceedings have been brought, or, in the case of an

- 4 -

administrative proceeding, the court to which an appeal or other action for review of an administrative determination may be taken, finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm." *Id.* § 10(a)(1).

¶ 19 Here, the records fall under the purview of the Mental Health Act. The records were kept by doctors, nurses, and other individuals who fall under the definition of the term "therapist," in the course of providing mental health services to the recipient, Kiersten. See *id.* § 2. At issue is whether plaintiff introduced Kiersten's mental condition as an element of plaintiff's claim. We find our supreme court's decision in *Reda* controlling.

¶ 20 In *Reda*, following knee replacement surgery, plaintiff filed a complaint, alleging that he developed "an acute thrombosis of the popliteal artery in his right leg" that defendant doctors failed to timely diagnose and treat. *Reda*, 199 Ill. 2d at 50. As a result of the doctors' negligence, plaintiff " 'sustained injuries of a personal and pecuniary nature.' " *Id.* In defendants' subsequent interrogatories, plaintiff was asked to specify his injuries. He responded that " '[a]s a result of the occurrence, I suffered severe injuries to my leg (toes amputated and calf muscle removed) which have resulted in disability, disfigurement, pain and suffering. I also suffered a stroke, heart problems and kidney problems.' " *Id.* at 50-51. Thereafter, defendants sought treatment records from plaintiff's treating physicians, which the treating physicians refused to release, invoking the Mental Health Act's privilege. *Id.* at 51. Defendants filed a motion to compel. *Id.*

¶ 21 During discovery, plaintiff testified at his deposition to having constant headaches that he did not have prior to the surgery. *Id.* at 52. Plaintiff's wife also testified that following surgery, plaintiff was " 'very emotional' " and " 'very frustrated.' " *Id.* She further testified that since the surgery, " 'he can be very mean, extremely mean. And I'm always at fault. I make wrong decisions, everything. It's a hard situation. Sometimes I want to go crawl under the bed and stay there for ten days.' " *Id.* at 52-53.

¶ 22 After an *in camera* inspection of the records, the trial court ordered disclosure. *Id.* at 53. The appellate court, with one justice dissenting, upheld the trial court's order, finding that disclosure was proper because plaintiff placed his mental condition at issue. *Id.* Our supreme court reversed, holding that plaintiff "did not place his mental condition at issue merely by claiming damages for what is a neurological injury, *i.e.*, stroke and/or other brain damage." *Id.* at 58. Quoting the dissenting appellate court judge, the *Reda* court stated that " '[a] neurological injury is not synonymous with psychological damage ***. Nor does neurological injury directly implicate psychological damage.' " *Id.* (quoting *Reda v. Advocate Health Care*, 316 Ill. App. 3d 1115, 1120 (2000) (South, J., dissenting)). The *Reda* court reasoned that

"[i]f that were true, in every case in which the plaintiff claimed damages stemming from a physical injury to the brain, the door to discovery of the plaintiff's mental-health records would automatically open, and the limited exception in section 10(a)(1) of the [Mental Health Act] would effectively eviscerate the privilege." *Id.*

¶ 23 Finally, the *Reda* court also found disclosure improper because the record contained information regarding plaintiff's injuries from several additional sources. *Id.* at 62.

Specifically, the court noted that the record contained references to plaintiff's medical records maintained by the hospital and various physicians, which the defendants could use to "question and contest all opinions and conclusions contained therein." *Id.*

¶ 24 Similarly in this case, plaintiff alleged that following surgery, Kiersten "developed infectious meningitis, and the serious sequalae thereof, and suffered injuries of a personal and pecuniary nature." Dr. Borchardt's report indicated that Kiersten exhibited several cognitive impairments, concluded that Kiersten's "impaired cognitive presentation is the result of her recent episode of meningitis" and that Kiersten presents with signs and symptoms consistent with a *traumatic brain injury*. Similar to *Reda*, which held that a recipient does not place his or her mental condition at issue merely by claiming brain damage (*id.* at 58), we find that plaintiff did not place Kiersten's mental condition at issue.

¶ 25 We also find disclosure improper in this case because the record contains some of the information sought by defendants from other sources, especially Dr. Borchadt's report. The report contains what plaintiff describes as a "road map" regarding Kiersten's condition before the meningitis that defendants can use to question the extent of Kiersten's injuries from the meningitis.

¶ 26 Defendants urge us to follow *Phifer v. Gingher*, 2017 IL App (3d) 160170, a case in which another district of this court found plaintiff placed her mental condition at issue. We find *Phifer* distinguishable. In *Phifer*, following an automobile collision, plaintiff filed a negligence complaint seeking damages for " 'great pain and anguish both in mind and body and will in the future continue to suffer.' " *Id.* ¶ 4. Plaintiff claimed " 'psychiatric, psychological and/or emotional injuries' " as a result of the collision. *Id.* ¶ 6. Plaintiff saw a doctor for "psychological issues" after the collision. *Id.* ¶ 8. Defendant requested medical records prior to the collision, plaintiff refused, and defendant filed a motion to compel which the trial court granted. *Id.* ¶¶ 13-19.

¶ 27 The *Phifer* court distinguished its case from *Reda* and held that plaintiff placed her mental condition at issue. *Id.* ¶ 28. The court found that "plaintiff did not restrict her damage claims to physical/neurological injuries. Instead, plaintiff's original complaint alleged that 'she suffered great pain and anguish both in *mind* and body and will in the future continue to so suffer.' " (Emphasis in original). *Id.* The court also found that, unlike plaintiff in *Reda*, plaintiff stated she was claiming " '*psychiatric, psychological* and/or emotional injuries' " as a result of the collision. (Emphasis in original). *Id.* Plaintiff alternatively argued that she had withdrawn her claims solely attributable to the mental health injuries she sustained. However, the court rejected that argument, finding that plaintiff had not directed the court "to any agreed order, stipulation, or document of record confirming plaintiff's decision to abandon damages based on the psychiatric, psychological, and/or emotional injuries." *Id.* ¶ 34.

¶ 28 Unlike the plaintiff in *Phifer*, plaintiff's counsel in this case stipulated that plaintiff does not seek damages based on psychiatric, psychological, and emotional damages; plaintiff did not allege that Kiersten suffered pain and anguish in mind and body; and plaintiff is not claiming psychiatric or psychological injuries. The plaintiff in *Phifer* stated that she saw a doctor for "psychological issues," clearly placing her mental condition at issue. Here, Kiersten did not see Dr. Borchadt for psychological issues, but rather for a neurological injury, which is not synonymous with psychological damage and thus does not place plaintiff's mental health at issue.

¶ 29    Next, defendants argue that fundamental fairness requires the disclosure of the medical records. In support of their argument, defendants cite *D.C. v. S.A.*, 178 Ill. 2d 551, 570 (1997), where our supreme court held that the Mental Health Act privilege may yield in certain circumstances where the information sought in the medical records has the potential to fully negate plaintiff's claim and absolve defendant of all liability. In *D.C.*, plaintiff pedestrian was struck by an automobile and subsequently filed a negligence complaint. *Id.* at 554. Defendants sought plaintiff's medical records from a psychiatric unit of a hospital. *Id.* at 555. The treating physician sent plaintiff to the hospital because there was an indication that the plaintiff might have been attempting suicide at the time of the accident. *Id.*

¶ 30    Our supreme court found that

> "the information plaintiff seeks to protect potentially contradicts his assertion that defendants were negligent and caused the accident. The information has the potential to completely absolve defendants from any liability. Too, the information meets the criteria for disclosure under section 10(a)(1). Certainly, the information is relevant as it pertains to plaintiff's conduct and actions at the time of the accident. The information is probative as well because it appears to provide a possible explanation of how the accident occurred. Further, the information does not appear to be unduly prejudicial, as it does not concern plaintiff's psychiatric treatment or progress, but refers only to his purported conduct at the time of the accident and various assessments by plaintiff's treaters of those purported events." *Id.* at 569.

¶ 31    We find the facts in this case distinguishable from *D.C.* because it does not pertain to Kiersten's conduct and actions at the time of her injuries and the information cannot absolve defendants from liability, as the information contained in the records would go only to damages and not liability. See *Reda*, 199 Ill. 2d at 62.

¶ 32    Finally, defendants argue that plaintiff waived the privilege by failing to object when the trial court read in open court the mental health records plaintiff sought to assert the privilege upon. Defendants contend that plaintiff should have objected as soon as the trial court began to reveal the sensitive details contained in the medical records. We disagree.

¶ 33    Waiver is the voluntary relinquishment of a known right that arises from an affirmative, consensual act consisting of an intentional relinquishment of a known right. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 66. Privilege may be waived by failing to assert the privilege when privileged information is requested. *Id.* A party preserves the privilege when it attempts to limit disclosure. *Id.*

¶ 34    In this case, plaintiff did not voluntarily relinquish the privilege. When defendants requested the medical records, plaintiff limited disclosure by redacting information pertaining to Kiersten's mental health records. In doing so, plaintiff satisfied the requirements of asserting the privilege. The trial court improperly read the privileged information in open court. We find plaintiff did not waive the privilege because he had already objected to the disclosure of the records.

¶ 35    Defendants have not made the necessary showing to bring these records within the narrow exception in section 10(a)(1) of the Mental Health Act. Our ruling is without prejudice to defendants being able to revisit this issue if plaintiff takes later action in this case through damages sought or claims made that defendants can in good faith assert is an introduction of Kiersten's mental condition as an element of the claims.

## III. CONCLUSION

The trial court erred in granting defendants' motion to compel because plaintiff did not place Kiersten's mental condition at issue merely by claiming brain damage. Furthermore, disclosure of the records is improper because the record contains references to the information sought by defendants from other sources, which defendants could use to contest the opinions in the report. Finally, the information plaintiff seeks to protect is not relevant or probative and is unduly prejudicial as it does not pertain to the Kiersten's conduct and actions at the time of her injuries.

Accordingly, we reverse the trial court's discovery order. We also vacate the contempt finding against plaintiff's counsel.

Reversed and remanded. Contempt order vacated.