2021 IL App (2d) 200123
No. 2-20-0123
Opinion filed February 24, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN DOE, Individually, as Independent Administrator of the Estate of Jane Doe, Deceased, and as Parent and Next Friend of James Doe, a Minor, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 18-L-796 |
| GREAT AMERICA LLC., d/b/a Six Flags Great America, | ) ) ) | Honorable Jorge L. Ortiz, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, John Doe, individually, as independent administrator for the estate of Jane Doe, and as parent and next friend of James Doe, appeals the trial court's order finding him in contempt for refusing to comply with a motion by defendant, Great America LLC, to compel the identity of Jane Doe's mental health providers and allow discovery of her psychiatric medical records. He asserts privilege under section 10 of the Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/10 (West 2018)) and argues that Jane Doe's mental condition had not been introduced as an element of plaintiff's wrongful death claim to trigger an

exception to the privilege. We determine that Jane Doe's mental condition was introduced as an element of plaintiff's wrongful death claim when plaintiff alleged that, as a proximate result of defendant's acts or omissions, Jane Doe suffered a brain injury that rendered her bereft of reason and caused her to commit suicide. Accordingly, we affirm and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3     In November 2017, plaintiff and Jane Doe filed a complaint seeking damages in connection with a battery at defendant's amusement park. The complaint alleged that a group of youths viciously attacked their family at the park, causing serious injuries, and that park employees failed to intervene. The complaint alleged premises liability, negligence, and a claim under section 15(a)(1) of the Rights of Married Persons Act (750 ILCS 65/15(a)(1) (West 2016)).

¶ 4     During discovery, defendant submitted an interrogatory asking plaintiff and Jane Doe whether they were claiming any psychiatric, psychological, or emotional injuries from the incident and, if so, to provide the names of professionals providing treatment. The interrogatory further asked plaintiff and Jane Doe whether they suffered any psychiatric, psychological, or emotional injury before the incident occurred and, if so, to describe the nature of any such injury. On February 22, 2019, plaintiff and Jane Doe responded that they were not claiming any such injuries as described in the interrogatory. Plaintiff and Jane Doe also objected to separate interrogatories about previous injuries or illnesses.

¶ 5     On May 5, 2019, Jane Doe committed suicide. On July 16, 2019, plaintiff filed an amended complaint adding a wrongful death claim related to her suicide. Plaintiff alleged that, as a proximate result of defendant's acts or omissions, "Jane suffered severe, debilitating and permanent physical injuries that caused her conscious pain and suffering, including physical injuries to her brain that rendered her bereft of reason and suicidal."

¶ 6     Defendant moved to dismiss the new claims, alleging that the suicide was an independent intervening act and not a foreseeable result of defendant's negligence. Defendant argued that plaintiff did not allege sufficient facts that Jane Doe suffered a brain injury that caused her to become bereft of reason and that he did not allege that Jane Doe was insane at the time of her suicide. Plaintiff responded that he properly pled, as an ultimate fact, "Jane Doe's insanity and loss of reason, to be proven at trial." The trial court denied the motion to dismiss.

¶ 7     In a further interrogatory, defendant asked plaintiff to identify Jane Doe's mental health providers, and plaintiff refused. Defendant then filed a motion to compel plaintiff to completely answer the interrogatory and withdraw plaintiff's objection to a subpoena of medical insurance records. Defendant argued that plaintiff had put Jane Doe's mental health at issue by pleading that defendant's acts or omissions caused her to become insane and bereft of reason and commit suicide. Defendant stated that it learned through pharmacy records that a psychiatrist prescribed Jane Doe medications to treat symptoms of schizophrenia and depression, as well as panic attacks, post-traumatic stress disorder, and obsessive disorders. Yet, plaintiff failed to disclose the identification of that provider. Defendant alleged that the information was necessary to defend the action. Plaintiff replied that the records were privileged under the Act. Further, he was not seeking damages for any mental, emotional, or psychological injuries to Jane Doe.

¶ 8     The trial court granted the motion to compel, finding an exception to the privilege applied because Jane Doe's mental health had been placed "at issue" when plaintiff alleged that the incident caused her to become bereft of reason. In doing so, the court distinguished cases applying the Act that found that the exception did not apply when a plaintiff sought damages for a physical brain injury instead of a psychological injury. The court stated that "[i]f bereft of reason isn't

psychological damage, then, you know, I don't know what is." The court then noted that it was required to:

> "conduct an in camera review of [Jane Doe's] mental health records for the purpose of considering their relevance, whether they're probative, whether they're otherwise clearly admissible, whether there's other satisfactory evidence that is not available regarding the facts sought to be established, and that disclosure is more important to the interests of substantial justice than protection of any injury which disclosure is likely to cause."

¶ 9    Plaintiff refused to comply, and the trial court found him in direct friendly civil contempt and fined him $100. Plaintiff appeals.

¶ 10                                    II. ANALYSIS

¶ 11    Plaintiff contends that the trial court erred in finding him in contempt. He argues that the trial court improperly ordered discovery, because the medical records sought by defendant are privileged under the Act and no exception applies. In particular, he argues that he is seeking damages not for a psychological injury but only for a physical brain injury.

¶ 12    "Where an individual appeals a finding of contempt for violating a discovery order, the contempt finding is final and appealable, presenting to a reviewing court the propriety of the discovery order." *Sparger v. Yamini*, 2019 IL App (1st) 180566, ¶ 16. " 'If the discovery order is invalid, then the contempt order, for failure to comply with that discovery order, must be reversed.' " *Id.* (quoting *In re D.H.*, 319 Ill. App. 3d 771, 773 (2001)). The applicability of a statutory evidentiary privilege and any exceptions is a matter of law that we review *de novo*. *Id.*

¶ 13    The Act provides that

> "[e]xcept as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf

and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." 740 ILCS 110/10(a) (West 2018). Section 10(a)(2) of the Act provides an exception to the privilege, stating that

> "[r]ecords or communications may be disclosed in a civil proceeding after the recipient's death when the recipient's physical or mental condition has been introduced as an element of a claim or defense by any party claiming or defending through or as a beneficiary of the recipient, provided the court finds, after *in camera* examination of the evidence, that it is relevant, probative, and otherwise clearly admissible; that other satisfactory evidence is not available regarding the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from any injury which disclosure is likely to cause." *Id.* § 10(a)(2).

¶ 14    "A party may introduce his or her mental condition in several ways during the course of litigation, including, *e.g.*, in the pleadings, answers to written discovery, a deposition, in briefs or motions, in argument before the court, or by stipulation." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 61 (2002). "Ordinarily, a party's prayer for pain and suffering damages will not introduce mental condition as an element of the party's claim." *Deprizio v. MacNeal Memorial Hospital Ass'n*, 2014 IL App (1st) 123206, ¶ 18. Also, the allegation of a neurological injury does not automatically introduce mental condition as an element. *Reda*, 199 Ill. 2d at 58.

¶ 15    For example, in *Reda*, the plaintiff brought a medical malpractice action against a hospital and doctors after developing an acute thrombosis and an apparent stroke. In depositions, the plaintiff and his wife disclosed that he suffered from "headaches, loss of memory, decline in comprehension, difficulties in performing daily activities, and changes in personality." *Id.* at 57. During discovery, the plaintiff's counsel refused to comply with a pretrial discovery order

requiring him to produce his psychiatric records, arguing that the records were privileged under the Act. The trial court held the plaintiff's counsel in friendly civil contempt, and the plaintiff appealed. The appellate court affirmed in part. *Id.* at 53.

¶ 16    Our supreme court reversed. The court held that the plaintiff did not introduce his mental condition as an element of the cause of action by discussing during depositions his headaches, loss of memory, decline in comprehension, difficulties in performing daily activities, and changes in personality, because such alleged injuries were physical/neurological and could be separated from psychological damage. *Id.* at 57-58. In particular, the court noted that a neurological injury is not synonymous with psychological damage, nor does a neurological injury directly implicate psychological damage. *Id.* at 58. The court stated that, if it were otherwise, then in every case in which the plaintiff claimed damages stemming from a physical brain injury, the door to discovery of the plaintiff's mental-health records would automatically open, and the limited exception of the Act would effectively eviscerate the privilege. *Id.*

¶ 17    Likewise, in *Sparger*, the First District held that evidence of cognitive impairments consistent with a traumatic brain injury did not place the plaintiff's mental condition at issue. *Sparger*, 2019 IL App (1st) 180566, ¶ 24. The court distinguished the case from one in which the plaintiff alleged pain and anguish in both mind and body and claimed psychiatric, psychological, and/or emotional injuries. *Id.* ¶ 26 (citing *Phifer v. Gingher*, 2017 IL App (3d) 160170, ¶¶ 4, 6).

¶ 18    Plaintiff argues that, as in *Reda* and *Sparger*, he merely seeks damages for a condition consistent with a physical brain injury, making the exception inapplicable. But *Reda* and *Sparger* did not involve a suicide, which complicates the matter.

¶ 19    If the decedent had no right of action at the time of death, the personal representative also has no right of action in a wrongful death action. *Turcios v. The DeBruler Co.*, 2015 IL 117962,

¶ 17 (citing *Williams v. Manchester*, 228 Ill. 2d 404, 421 (2008)). Thus, the injury that the personal representative alleges caused the decedent's death must be the same injury that the decedent suffered prior to death. *Id.* The general rule, applicable in negligence actions, is that the injured party's voluntary act of suicide is an independent intervening act, which is unforeseeable as a matter of law and breaks the chain of causation from the tortfeasor's negligent conduct. *Id.* ¶ 20. Our supreme court has stated that "a suicide may result from a complex combination of psychological, psychiatric, chemical, emotional, and environmental factors." *Id.* ¶ 41. Thus, "it is the rare case in which the decedent's suicide would not break the chain of causation and bar a cause of action for wrongful death." *Id.* However, an exception exists when, as the proximate result of a head injury caused by the negligence of another, the injured person becomes " 'insane and bereft of reason' " and, while in that condition and as a result of it, he or she commits suicide. *Crumpton v. Walgreen Co.*, 375 Ill. App. 3d 73, 80 (2007) (quoting *Stasiof v. Chicago Hoist & Body Co.*, 50 Ill. App. 2d 115, 122 (1964)). In such a case, the act is not voluntary and therefore does not break the causal connection between the suicide and the act that caused the injury. *Id.*

¶ 20    Our supreme court has adopted this approach, in distinction from "[t]he universal rule followed by most jurisdictions *** that the victim's act of suicide is a new and independent agency breaking the chain of causation from the negligent act and is not reasonably foreseeable." *Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156, 158-59 (1965). The court noted that the " 'better view' " was expressed by Dean Prosser, who stated that

> " '[if] insanity prevents [the victim] from realizing the nature of his act or controlling his conduct, his suicide is to be regarded either as a direct result and no intervening force at all, or as a normal incident of the risk, for which the defendant will be liable. *** But if the suicide is during a lucid interval when he is in full command of his faculties but his life has

become unendurable to him, it is agreed that his voluntary choice is an abnormal thing, which supercedes the defendant's liability.' " *Id.* at 159 (quoting William L. Prosser, Handbook of the Law of Torts § 49, at 274 (2d ed. 1955)).

¶ 21   Here, for plaintiff to recover, he would be required to prove as an element of his cause of action that, as the proximate result of Jane Doe's head injury, she became insane and bereft of reason and committed suicide while in that state. Such proof necessarily entails an examination of her mental condition. Unlike cases such as *Reda* and *Sparger*, which involved a brain injury without an intervening suicide, a suicide directly implicates a psychological condition or psychological damage. "Bereft of reason" and "insanity" implicate a psychological injury. "Insanity" by definition, is indeed a "mental disorder." Black's Law Dictionary (11th ed. 2019). Likewise, a determination of whether Jane Doe was in a "lucid" state when she took her life requires consideration of her mental condition. See Black's Law Dictionary (11th ed. 2019) (defining "lucid" in part as being "[sane]"). Thus, her mental condition was introduced as an element of the wrongful death claim, making her mental health records discoverable. Accordingly, the trial court did not err when it granted the motion to compel and found plaintiff in contempt.

¶ 22   Plaintiff also argues that the trial court applied the wrong statutory standard to find the records discoverable. He argues that the court's statement that he placed Jane Doe's mental health "at issue" showed that the court was applying a privilege found in a different statute, namely section 8-802 of the Code of Civil Procedure (735 ILCS 5/8-802 (West 2018)). Thus, plaintiff contends that the court failed to consider whether plaintiff introduced Jane Doe's mental condition as an element of the wrongful death claim. But the parties consistently referenced the Act in their pleadings and when arguing before the court. The court also discussed cases applying the Act and itself applied the Act's language when it noted that it was required to conduct an *in camera* review

of the records. The court discussed no other statutory privilege. Thus, plaintiff's argument is unsupported by the record.

¶ 23   Finally, we recognize that, under certain circumstances, fundamental fairness may dictate that the privilege yield. *D.C. v. S.A.*, 178 Ill. 2d 551, 568 (1997). Because we determine that plaintiff introduced Jane Doe's mental condition as an element of his wrongful death claim, we need not and do not determine whether fundamental fairness would also require the privilege to yield in this case.

¶ 24                                   III. CONCLUSION

¶ 25   For the reasons stated, we affirm the judgment of the circuit court of Lake County and remand the cause for further proceedings.

¶ 26   Affirmed.

**No. 2-20-0123**

| | |
|---|---|
| **Cite as:** | *Doe v. Great America LLC*, 2021 IL App (2d) 200123 |
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 18-L-796; the Hon. Jorge L. Ortiz, Judge, presiding. |
| **Attorneys for Appellant:** | Patrick L. Provenzale and Nemura G. Pencyla, of Ekl, Williams & Provenzale LLC, of Lisle, for appellant. |
| **Attorneys for Appellee:** | John A. Terselic and Brett M. Henne, of Swanson, Martin & Bell, LLP, of Libertyville, for appellee. |