# Illinois Official Reports

## Appellate Court

<hr>

### *Deprizio v. MacNeal Memorial Hospital Ass'n*, 2014 IL App (1st) 123206

<hr>

| | |
|---|---|
| Appellate Court Caption | LOUISE DEPRIZIO, Plenary Guardian of the Estate and Person of Lisa Deprizio, a Disabled Person, Plaintiff and Cross-Appellee, v. THE MacNEAL MEMORIAL HOSPITAL ASSOCIATION, a Not-for-profit Corporation, Defendant-Appellee and Cross-Appellant (VHS of Illinois, Inc. a Corporation; Midwest Psychiatry Associates, S.C., a Corporation; Humaira F. Saiyed, M.D.; Midtown Physicians, S.C., a Corporation; Dilip P. Patel, M.D., S.C., a Corporation; Yili Guo, M.D.; and Dilip P. Patel, M.D., Defendants; Keith A. Hebeisen, Contemnor-Appellant). |
| District & No. | First District, Third Division<br>Docket No. 1-12-3206 |
| Filed | May 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a medical malpractice action arising from plaintiff's mental impairment, which allegedly resulted from a lithium overdose that occurred while she was a patient at defendant hospital, the trial court properly ordered plaintiff to disclose certain limited records concerning her treatment for cognitive impairment prior to the alleged overdose as reviewed by independent witnesses identified by plaintiff as witnesses at trial, since the trial judge selected the material to be disclosed during an *in camera* review and the disclosure encroached to the least possible extent on plaintiff's privilege under the Mental Health and Developmental Disabilities Confidentiality Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-6426; the Hon. Eileen Mary Brewer, Judge, presiding. |
| Judgment | Affirmed and remanded. |

Counsel on Appeal

Thomas K. Prindable and Robert Sheridan, both of Clifford Law Offices, of Chicago, for appellant.

Susan K. Laing and Sapna G. Lalmalani, both of Anderson, Rasor & Partners, LLP, of Chicago, for appellee.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    The confidentiality privilege set out in the Mental Health and Developmental Disabilities Confidentiality Act (the Act) (740 ILCS 110/1 *et seq.* (West 2010)) comes before us after plaintiff's counsel, for the second time, takes a "friendly" contempt. His refusal, unrelated to the earlier appeal, regards various records about the treatment of plaintiff's cognitive impairment reviewed by independent expert witnesses that plaintiff identified as testifying at trial. The issue involves the effect of Rule 213(f)(2) disclosures on the exercise of the confidentiality privilege created by the Act. Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2007). MacNeal Memorial Hospital Association cross-appeals, asserting that the trial court erred in limiting the extent of the disclosure of Deprizio's mental health records. We find no error and affirm.

¶ 2                                    BACKGROUND
¶ 3    Plaintiff Lisa Deprizio alleges she suffered from a lithium overdose as a patient at MacNeal Memorial Hospital in September 2002. She filed suit against MacNeal and her doctors in 2004, alleging medical negligence. In 2005, one of the defendant doctors filed a motion to compel production of records regarding Deprizio's psychological care in the decade leading up to her injury. Deprizio refused and claimed the material was protected under the Act. The trial court denied the motion to compel in part, but granted production of: (i) records pertaining to Deprizio's prescriptions, levels, and reactions to lithium; and (ii) mental health records from a defendant doctor who treated Deprizio after her alleged injury.
¶ 4    Deprizio's attorney, Keith Hebeisen, refused to produce the records, the court held him in contempt, and he appealed. We affirmed disclosure. *Deprizio v. MacNeal Memorial Hospital Ass'n*, No. 1-06-2909 (Sept. 19, 2008) (unpublished order under Supreme Court Rule 23). The supreme court denied Hebeisen's petition for leave to appeal. *Deprizio v. MacNeal Memorial Hospital Ass'n*, 231 Ill. 2d 630 (2009) (table).
¶ 5    On remand, Deprizio filed supplemental disclosures of her three independent expert witnesses. See Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2007). Dr. Stacy McCarty, a doctor of rehabilitation medicine, would testify that Deprizio suffered an organic brain injury as a result

of lithium toxicity. McCarty listed Deprizio's symptoms as "impaired memory, impaired cognition, impaired abstract reasoning, slow processing speed and decline in intelligence." She would testify that the injury is permanent.

¶ 6 Another expert, Dr. Nancy Landre, a clinical neuropsychologist, would testify on Deprizio's neuropsychological evaluation. Regarding the causes, her report stated, "*[W]hile depression can certainly have an adverse impact on cognitive functioning*, the timing, level of impairment, and severity of Ms. Deprezio's [*sic*] deficits suggest that other factors are also responsible for this apparent decline. In particular, \*\*\* Ms. Deprezio's [*sic*] episode of Lithium toxicity in 2002 \*\*\*." (Emphasis added.)

¶ 7 The third expert, Dr. Shabbir Zarif, a psychiatrist, stated that Deprizio suffers from an organic brain injury resulting from the 2002 lithium overdose. Specifically, Zarif wrote in his report that the results of Deprizio's cognitive examination showed that her visual spatial skills, attention, information processing ability, motor skills, and global cognitive functioning were more than one standard deviation below normal. He stated:

> "This cognitive exam pattern is *not necessarily found in patients with bipolar, depressive or anxiety disorders*, esp[ecially] the visio spatial functions and are more consistent with a schizophrenia process which she clinically does not fit the picture of. However in light of the relatively recent decline, the history of lithium toxicity, coma, repeated seizures, she may have an 'organic brain syndrome' from that episode in 2002." (Emphasis added.)

Zarif further stated that Deprizio's "overall slowness may be related to brain dysfunction and not just meds but may be related to anxiety and poor concentration." Notably, both Landre and Zarif discuss the effects of Deprizio's past mental health problems (including depression) on her cognitive impairment, though it seems neither believes they are wholly responsible for her cognitive impairment.

¶ 8 Based on these disclosures, MacNeal filed a motion to compel production of all of Deprizio's mental health records. MacNeal offered two arguments in support: (i) Deprizio placed her mental condition at issue by introducing her mental well-being as an element of damages; and (ii) the records were relevant because Deprizio's bipolar disorder or depression might have caused or contributed to her cognitive impairment.

¶ 9 The trial court found that Deprizio introduced her mental state as an element of her claim and conducted an *in camera* review of all Deprizio's psychiatric records from 1992 to 2002, which included records from Dr. Catherine Camilleri at Rush Hospital, among others. After reviewing the records, the trial court ordered Deprizio to produce all records reviewed by Zarif and also redacted portions of records of treatment by Camilleri relating to any cognitive impairment before 2002. The trial court specified notes from eight sessions with Camilleri in 2000 and 2001.

¶ 10 Hebeisen refused to disclose these records and took a "friendly" contempt appeal.

¶ 11 ANALYSIS

¶ 12 The correctness of a discovery order may be tested through a contempt order, and the appeal immediately taken. Ill. S. Ct. R. 304(b)(5) (eff. Feb. 26, 2010); *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 10. We review the underlying discovery order. *Id.*

¶ 13    As to Hebeisen's appeal, we must decide whether the trial court erred in holding that Deprizio placed her mental condition at issue through her expert witness disclosures. As to the cross-appeal, we are asked whether the trial court erred in limiting disclosures of Deprizio's mental health records to those mentioning cognitive defects. We hold that the trial court did not err in either respect.

¶ 14    Our analysis under the Act proceeds in two steps. First we determine whether Deprizio waived her privilege. If waived, we then must satisfy ourselves that the trial court reasonably construed the statutory standards in deciding the scope of the records and communications to be disclosed.

¶ 15                                    Waiver of Privilege

¶ 16    The Act carefully maintains the confidentiality of mental health records except in specific circumstances explicitly enumerated. *Norskog v. Pfiel*, 197 Ill. 2d 60, 71 (2001). The courts must be vigilant in guarding against the breach of this statutory privilege. *Id.* at 72. Those seeking the nonconsensual release of mental health information face "a formidable challenge" and must show that the Act authorizes the disclosure. *Id.*

¶ 17    Except as provided in the Act, a recipient of mental health services "has the privilege to refuse to disclose and to prevent the disclosure of" his or her mental health records. 740 ILCS 110/10(a) (2010). The Act defines "record," in relevant part, to mean "any record kept by a therapist or by an agency in the course of providing mental health *** service to a recipient concerning the recipient and the services provided." 740 ILCS 110/2 (West 2010).

¶ 18    Waiver of the privilege occurs when, among other reasons, the recipient "introduces his [or her] mental condition or any aspect of his [or her] services received for such condition as an element of his [or her] claim or defense." 740 ILCS 110/10(a)(1) (West 2010). "A party may introduce his or her mental condition in several ways during the course of litigation, including, *e.g.*, in the pleadings, answers to written discovery, a deposition, in briefs or motions, in argument before the court, or by stipulation." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 61 (2002). Ordinarily, a party's prayer for pain and suffering damages will not introduce mental condition as an element of the party's claim. *Webb v. Quincy City Lines, Inc.*, 73 Ill. App. 2d 405, 408-09 (1966). Even where a plaintiff alleges a neurological injury, his or her mental condition may still not be at issue. *Reda*, 199 Ill. 2d at 58. But an exception can arise–in claims where pain and suffering is an element of damages, the recipient of mental health services will be deemed to have introduced his or her mental condition "only if the recipient or a witness on his behalf first testifies concerning the record or communication." 740 ILCS 110/10(a)(1) (West 2010). We review *de novo* the ruling that a party has introduced his or her mental condition under the Act. *D.C. v. S.A.*, 178 Ill. 2d 551, 560-61 (1997).

¶ 19    Hebeisen argues that the law of the case doctrine prevents relitigation of this issue. We disagree. Under the law of the case doctrine, a court's unreversed decision on a question of law or fact settles that question "for all subsequent stages of the suit." (Internal quotation marks omitted.) *Alwin v. Village of Wheeling*, 371 Ill. App. 3d 898, 911 (2007). "Questions of law that are decided on a previous appeal are binding on the trial court on remand as well as on the appellate court in subsequent appeals." *Long v. Elborno*, 397 Ill. App. 3d 982, 989 (2010). Nevertheless, the binding effect crumbles where "the facts presented in the subsequent proceedings are so substantially different as to require a different interpretation." *Turner v. Commonwealth Edison Co.*, 63 Ill. App. 3d 693, 698 (1978). The doctrine has two other

exceptions: (i) when a higher reviewing court makes a contrary ruling on the same issue after the lower court's decision; and (ii) when a reviewing court finds that its earlier decision was palpably erroneous. *Kreutzer v. Illinois Commerce Comm'n*, 2012 IL App (2d) 110619, ¶ 31.

¶ 20    In our 2008 order, we addressed (i) the disclosure of Deprizio's lithium dosages and reactions; and (ii) the treatment records of defendant Dr. Saiyed. *Deprizio v. MacNeal Memorial Hospital Ass'n*, No. 1-06-2909 (Sept. 19, 2008) (unpublished order under Supreme Court Rule 23). As to the lithium records, Deprizio's complaint "places squarely at issue the amount of Lithium used to treat Plaintiff's psychiatric condition," and that the privilege is waived under the "any aspect of services" exception in section 10(a)(1). See 740 ILCS 110/10(a) (West 2010); *Deprizio v. MacNeal Memorial Hospital Ass'n*, No. 1-06-2909 (Sept. 19, 2008) (unpublished order under Supreme Court Rule 23). The history of Deprizio's lithium dosages and her reactions to them was relevant to determine whether lithium toxicity caused her injuries. Hence, we held the privilege waived as to those records.

¶ 21    As to the treatment records of defendant Dr. Saiyed, this court noted that the statute allows Saiyed to use her records in her own defense. 740 ILCS 110/10(a)(3) (West 2010) ("the therapist and other persons whose actions are alleged to have been the cause of injury *** may testify as to such records or communication *** for the purpose of preparing and presenting a defense against such claim or action"). Accordingly, we reasoned that the Act required disclosure of Saiyed's treatment records to the other defendants.

¶ 22    Neither issue addressed in the 2008 appeal bears on the effect of Deprizio's Rule 213(f)(2) disclosures on her privilege under the Act, the issue before us now. As those disclosures had not been made yet, the issue did not even exist earlier. Because the facts controlling this appeal markedly differ, the law of the case doctrine does not apply.

¶ 23    Hebeisen next urges that the trial court erred in failing to follow *Reda v. Advocate Health Care*, 199 Ill. 2d 47 (2002). There, the plaintiff alleged he suffered injury after a negligently performed knee replacement surgery. *Id.* at 50-51. During the plaintiff's and his wife's depositions, when asked to describe the plaintiff's injuries, they mentioned brain damage and dramatic shifts in his personality and character after the surgery. *Id.* at 51-53. Based on this testimony, the circuit court ordered the plaintiff to disclose psychiatric records. *Id.* at 53. Plaintiff's attorney refused and took a finding of contempt. *Id*. The supreme court reversed, reasoning that the plaintiff "did not place his mental condition at issue merely by claiming damages for what is a neurological injury, *i.e.*, stroke and/or brain damage. *** 'A neurological injury is not synonymous with psychological damage ***. Nor does neurological injury directly implicate psychological damage.' [Citation.]" *Id.* at 58.

¶ 24    The court further noted that the relevancy of the records was not decisive to waiver of the Act's privilege in determining whether cognitive difficulties were caused by his presurgery mental illness. *Id.* at 57-59. "Although defendants might be denied access to information that could benefit their case, any 'unfairness' is the same that is present any time a privilege against disclosure is exercised. Evidentiary privileges, generally, ' "are not designed to promote the truth-seeking process, but rather to protect some outside interest other than the ascertainment of truth at trial." ' [Citations.]" *Id.* at 59.

¶ 25    Hebeisen argues that, like the plaintiff in *Reda*, the documents implicate a physical injury–an "organic brain dysfunction"–which has cognitive and physical manifestations, but is not a psychological injury. He notes that, while Deprizio's cognitive impairment before 2002 may be relevant to determining the extent of her damages from the lithium toxicity, the

- 5 -

privilege remains intact. He emphasizes this action is for medical malpractice and not psychiatric malpractice. See, *e.g.*, *Bloom v. Braun*, 317 Ill. App. 3d 720 (2000) (alleging negligent care in treatment of multiple personality disorder). He also argues that no waiver of the privilege can occur until an expert "first testifies concerning the record or communication" (740 ILCS 110/10(a)(1) (West 2010)), which has not happened.

¶ 26    We agree with the trial court's holding that Deprizio waived her privilege under the Act. In actions where pain and suffering is an element, the recipient of mental health services will be deemed to have introduced his or her mental condition "only if the recipient or a witness on his [or her] behalf first testifies concerning the record or communication." 740 ILCS 110/10(a)(1) (West 2010).

¶ 27    Pain and suffering damages, as counsel for Hebeisen conceded at oral argument, are in the mix here. But, the exception only waives the Act's privilege where there is testimony regarding privileged records. The exception reads:

> "[I]n any action in which pain and suffering is an element of the claim, mental condition shall not be deemed to be introduced merely by making such claim and shall be deemed to be introduced *only* if the recipient or a witness on his [or her] behalf first testifies concerning the record or communication." (Emphasis added.) 740 ILCS 110/10(a)(1) (West 2010).

Use of the word "only" indicates exclusivity. That is, where pain and suffering is an element of a claim, the exclusive means of waiving the privilege is testimony by or on behalf of the recipient of mental health services concerning the privileged records or communications.

¶ 28    Hebeisen is technically correct that no witness has testified regarding privileged records–yet. None of the three experts have been deposed or testified in court. But the Rule 213(f)(2) disclosures leave no doubt that Drs. Landre and Zarif will testify as to certain records that would otherwise be privileged. Landre reviewed "medical records provided by staff at Lutheran General Hospital's Adult Day Hospital," and Zarif reviewed copies of some of Deprizio's admission and discharge summaries. It follows that Landre's and Zarif's opinion testimony will derive in part from the records. See *Roberts v. Norfolk & Western Ry. Co.*, 229 Ill. App. 3d 706, 723 (1992) (Cook, J., specially concurring) (noting designation of witness as expert exposes witness to discovery of bases of opinions). Requiring the trial court to wait for live testimony before finding the Act's privilege waived not only proves inefficient, but is an illogical interpretation of the Act. See *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007) ("when undertaking the interpretation of a statute, we must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results"). Otherwise, the expert witnesses would be subjected to another deposition or the trial halted to conduct a thorough *in camera* inspection at that point. Therefore, we find the circumstances before us trigger the exception.

¶ 29                                    Fundamental Fairness Exception

¶ 30    MacNeal argues that Deprizio waived her privilege under the Act under the fundamental fairness exception, as articulated in *D.C. v. S.A.*, 178 Ill. 2d 551 (1997). We disagree. In *D.C.*, the plaintiff-pedestrian claimed that the defendant driver negligently struck him as he crossed a street. *Id.* at 554. There was some indication in the plaintiff's medical records that he was attempting to commit suicide. *Id.* at 555. The trial court ordered a limited disclosure of plaintiff's psychological records. *Id.* at 556-57. The supreme court affirmed, noting that

"under a strict application of section 10(a)(1), plaintiff did *not* introduce his mental condition 'as an element of his claim.' " (Emphasis added.) *Id.* at 570. Nonetheless, the court created a common law exception to strictures of the Act: "the interests of fundamental fairness and substantial justice outweigh the protections afforded the therapist-recipient relationship where plaintiff seeks to utilize those protections as a sword rather than a shield to prevent disclosure of relevant, probative, admissible, and not unduly prejudicial *evidence that has the potential to fully negate the claim plaintiff asserted against defendants and absolve them of liability.*" (Emphasis added.) *Id.*

¶ 31    In *Reda*, the court later explained that the exception was narrow and only applied to circumstances where "plaintiffs are invoking the mental-health therapist-patient privilege to exploit or subvert the legal process." *Reda*, 199 Ill. 2d at 61. Nothing in the record even hints at Deprizio seeking to hide evidence that would exculpate MacNeal and the other defendants. We do not believe she relies on the privilege to bolster an otherwise invalid claim.

¶ 32                              Aspect of Services Exception

¶ 33    MacNeal next argues that Deprizio waived her privilege under the "any aspect of services" exception. See 740 ILCS 110/10(a) (West 2010). We disagree again. The Act defines "services," which "includes but is not limited to examination, diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habilitation or rehabilitation." 740 ILCS 110/2 (West 2010). MacNeal asserts that the issue is injury arising from lithium toxicity plus the evaluation and treatment of Deprizio's underlying mental health condition. It is unclear how MacNeal reaches this conclusion. Based on her most recent complaint, the extent that lithium was administered to treat Deprizio's mental health is the sole "aspect of services" at issue; neither Deprizio nor her experts maintain that the defendants' "services" were otherwise deficient. Deprizio is not saying that she should not have been given lithium in 2002, only that she was given too much. Thus, the "aspect of services" exception does not apply.

¶ 34                    *In Camera* Inspection and Scope of Disclosure

¶ 35    In the parties' appeal and cross appeal, they both dispute the results of the trial court's *in camera* inspection and the scope of the ordered disclosure–Deprizio arguing that the disclosure was too broad, and MacNeal pressing for full disclosure.

¶ 36    Where a party has introduced his or her mental condition as an element of a claim, the court examines the records or testimony *in camera*, and discloses only the evidence that is "relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm." 740 ILCS 110/10(a)(1) (West 2010).

¶ 37    Implicit in these factors is that disclosure should be kept to a minimum even when the Act's privilege is waived. See *Norskog v. Pfiel*, 197 Ill. 2d 60, 71 (2001) ("In each instance where disclosure is allowed under the Act, the legislature has been careful to restrict disclosure to that which is necessary to accomplish a particular purpose. Exceptions to the Act are narrowly crafted."). We review the trial court's findings under these factors for an abuse of discretion. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55 (2002). "A trial court abuses its

discretion when no reasonable person would agree with its decision." *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011).

¶ 38    MacNeal argues that the circuit court abused its discretion by limiting disclosure to those records that refer to Deprizio's cognitive impairment before 2002. MacNeal characterizes the trial judge's review as a search for "magic words." We take issue with this description. From our own *in camera* inspection of the records, the disclosed documents (notes from eight treatment sessions in 2000 and 2001) do not appear to have been selected with a word search. The notes refer, albeit in passing, to symptoms of cognitive impairment similar to those discussed by Drs. Landre and Zarif in the Rule 213(f)(2) disclosures.

¶ 39    We cannot say that the selection of these notes, and the exclusion of others, is unreasonable. MacNeal's sole argument in its motion to compel was the relevancy of Deprizio's mental health records to the element of causation: "Plaintiff's own Rule 213(f)(2) witnesses indicate that there may be causes for Plaintiff's alleged loss of cognitive functioning other than the care she received at MacNeal in 2002." As this was the only relevant basis for inquiry, the trial judge's careful selection of notes kept disclosure to a minimum and encroached on Deprizio's privilege to the least possible extent.

¶ 40    Hebeisen further asserts that the trial court failed to make "findings" under the Act's factors before ordering disclosure. The trial court did not use the word "finds" or "findings" before ordering disclosure. While making specific findings is a better practice and would make the record clearer on appeal, our reading of the transcript as a whole shows that after the *in camera* inspection, the trial judge properly considered the factors and justified her ruling, as required under the Act.

¶ 41                                        CONCLUSION
¶ 42    We affirm the discovery orders of the trial court. We find Hebeisen acted in good faith to test the validity of the orders and vacate the sanction against him, and grant him 10 days after the mandate issues to comply with the orders at issue.

¶ 43    Affirmed and remanded.