2023 IL App (1st) 210486

No. 1-21-0486

Opinion filed May 10, 2023

Third Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| DEBRA MACKENNA, Independent Executor of the Estate of Diana Ursitti, deceased, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal from the |
| JOHN E. PANTANO, M.D.; BARRY M. GLICK, D.O.; GOPAL RAO, M.D.; SUBURBAN LUNG ASSOCIATES, S.C., a Domestic Corporation; ELK GROVE MEDICAL ASSOCIATES, LLC; and ALEXIAN BROTHERS MEDICAL CENTER, a Foreign Corporation, | ) ) ) ) ) ) ) | Circuit Court of Cook County.<br><br>No. 18L004425<br><br>Honorable |
| Defendants | ) ) | Christopher E. Lawler, Judge Presiding. |
| (Barry M. Glick, D.O.; Gopal Rao, M.D; and Elk Grove Medical Associates, LLC, | ) ) ) ) | |
| Defendants-Appellees). | ) | |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises following the circuit court's entry of a finding of contempt against plaintiff, Debra MacKenna, Independent Executor of the Estate of Diana Ursitti, deceased, following plaintiff's refusal to produce Ursitti's unredacted medical records. Ursitti was treated by defendants, John E. Pantano, M.D.; Barry M. Glick, D.O., Gopal Rao, M.D.; Suburban Lung Associates, S.C., a domestic corporation; Elk Grove Medical Associates, LLC; and Alexian Brothers Medical Center, a foreign corporation, before dying from lung cancer.

¶ 2    Plaintiff alleged in an 18-count complaint that defendants were negligent in timely diagnosing Ursitti's lung cancer, which led to her death. During discovery, certain defendants indicated that they were going to testify regarding Ursitti's mental health records at their depositions. Plaintiff filed a motion for a protective order, contending that defendants were not permitted to rely on Ursitti's mental health records because plaintiff's claims did not concern Ursitti's mental health. The court granted in part and denied in part plaintiff's motion, finding that defendant Dr. Rao could testify at his deposition based on his own Ursitti mental health records and those kept by his employer, defendant Elk Grove Medical Associates (EGMA). The court subsequently denied plaintiff's motion to reconsider. Plaintiff refused to produce the unredacted mental health records and asked the court to find her in contempt so that she could appeal the court's ruling.

¶ 3    On appeal, plaintiff contends that the trial court erred in ordering her to produce Ursitti's unredacted medical records under section 10(a) of the Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/1 *et seq.* (West 2018)). Plaintiff maintains that, under the Act, mental health records are privileged unless the plaintiff directly puts the records at issue or if the plaintiff affirmatively waives the protections of the Act. Plaintiff asserts that she

did not put the records "at issue," nor did she waive her rights under the Act. Plaintiff also contends that the court failed to make the necessary findings for production of the medical records in its order, ignoring such factors as whether the production of the records would be unduly prejudicial or whether the disclosure was more important than protection from injury for Ursitti. For the reasons that follow, we reverse the judgment of the circuit court and remand for further proceedings consistent with this order.

¶ 4                                I. BACKGROUND

¶ 5     Plaintiff filed her complaint in April 2018, raising claims of medical negligence and wrongful death and sought medical expenses based on defendants' alleged failure to timely diagnose Ursitti's lung cancer. As relevant here, plaintiff alleged that Ursitti received treatment from Dr. Rao beginning in October 2014. Plaintiff alleged that defendants, including Dr. Rao, failed to properly monitor and reasonably assess Ursitti's "condition" or "significant changes" in her condition. Plaintiff further alleged that defendants failed to order diagnostic tests and properly and timely diagnose Ursitti's lung cancer. Plaintiff attached to her complaint reports from a physician who reviewed Ursitti's medical history and defendants' medical records as they related to Ursitti's treatment and concluded that plaintiff had a meritorious basis for filing a medical negligence action against defendants. In the opinion of plaintiff's physician, defendants deviated from the standard of care based on their "acts and/or omissions" in treating Ursitti. Plaintiff's physician opined that Dr. Rao failed to adequately monitor Ursitti's condition, failed to review the records from Ursitti's previous primary care physician, and failed to review his own records, which would have demonstrated that Ursitti's condition was worsening.

¶ 6     In their answer to plaintiff's complaint, defendants denied any wrongdoing, and the case proceeded to discovery. During plaintiff's deposition, defense counsel asked plaintiff about the

memory lapses of her mother, Ursitti, and Dr. Rao's treatment. Defense counsel asked plaintiff if she recalled what Dr. Rao suggested plaintiff should do for "workup" after plaintiff brought Ursitti to see Dr. Rao to "find out if there was anything" with her memory lapses. Plaintiff's counsel objected, stating that the questions were getting into "privileged information" under the Act. Later, defense counsel asked plaintiff about Ursitti's "history of depression," and plaintiff's counsel instructed plaintiff to not answer any questions regarding Ursitti's "psychiatric or psychological conditions."

¶ 7    Following plaintiff's deposition, counsel for defendants sent a letter to plaintiff, stating that defendants intended to elicit testimony from Dr. Rao during his deposition regarding Ursitti's "diagnosis of depression, anxiety, and forgetfulness." Defendants maintained that section 10(a)(3) of the Act (740 ILCS 110/10(a)(3) (West 2018)) explicitly permitted Dr. Rao to testify regarding "pertinent records and communications with Ms. Ursitti for the purpose of preparing and presenting a defense against your client's allegations."

¶ 8    Plaintiff subsequently filed a motion for a protective order. In her motion, plaintiff stated that the medical records defendants sought contained protected mental health information under the Act. Plaintiff noted that defendants Dr. Rao and EGMA indicated that they intended to proffer opinions regarding Ursitti's mental health at Dr. Rao's discovery deposition. Plaintiff maintained that she was not waiving her privileges under the Act and was not putting Ursitti's protected records at issue because this case involved medical negligence based on the defendants' failure to diagnose and treat Ursitti's lung cancer, not her mental health. Plaintiff asserted that, therefore, any reference to mental health issues was not discoverable and should be redacted from the medical records. Plaintiff also contended that no witnesses should be asked any questions regarding Ursitti's mental health.

¶ 9    In response, defendants contended that all of Ursitti's mental conditions were relevant and should be disclosed under the Act so that defendants could rely upon them in their defense. Defendants maintained that the Act expressly permitted named defendants to disclose their records and testify regarding such records in order to prepare a defense to a medical negligence action. Defendants asserted that, as such, Ursitti's mental health conditions were an integral part of Dr. Rao's defense in this case because they offered insight into Dr. Rao's treatment and diagnosis of Ursitti. Defendants maintained that, despite plaintiff's suggestion, they did not contend that plaintiff waived her privileges under the Act but were asserting that section 10(a)(3) of the Act expressly permitted Dr. Rao's disclosure of his records concerning Ursitti's mental health to explain why his alleged negligence did not cause Ursitti's injuries as plaintiff alleged.

¶ 10    In reply, plaintiff asserted that Ursitti's mental health records had no bearing on whether defendants acted negligently in failing to diagnose Ursitti's lung cancer. Plaintiff contended that defendants should be prohibited from putting Ursitti's mental health at issue solely on the basis of their admission that plaintiff did not put Ursitti's mental health at issue and did not waive her privileges under the Act. Plaintiff maintained that the *only* way for a physician's records to become relevant is to have the information placed at issue by the plaintiff or for the recipient of the mental health services to waive the privileges under the Act. Plaintiff further contended that Ursitti's mental health record was irrelevant in this case, which involved a delayed lung cancer diagnosis. Plaintiff did not seek to prevent Dr. Rao from using his own records in asserting his defense, but plaintiff maintained that the records should be limited to those records probative of whether Dr. Rao breached his duty in failing to diagnose Ursitti's lung cancer earlier. Plaintiff asserted that her claims had no bearing on whether Dr. Rao was negligent in the provision of care protected by the Act.

¶ 11    The court granted plaintiff's motion in part and denied it in part. The court denied plaintiff's motion as to records from EGMA and Dr. Rao, finding that the records made by Dr. Rao and EGMA that contained mental health diagnoses were allowed as evidence in this case. The court ordered that Dr. Rao was permitted to use, rely on, and testify relating to all diagnoses contained in those medical records. The court granted the motion, however, with regard to all other medical records produced during discovery, which contained mental health diagnoses. The court ordered plaintiff's counsel to redact medical records, other than those from EGMA, and provide the records to all other counsel for review.

¶ 12    Plaintiff filed a motion to reconsider that ruling, again contending that the only way that Ursitti's mental health records could lose their protection under the Act was if plaintiff put Ursitti's mental health directly at issue in the case or affirmatively waived protection under the Act. Plaintiff maintained that neither exception applied here and that the records were irrelevant to Dr. Rao's defense, where plaintiff's claims concerned the timely diagnosis of Ursitti's lung cancer, not her mental health.

¶ 13    The court denied plaintiff's motion to reconsider, finding that its original ruling was proper. The court acknowledged that plaintiff did not place Ursitti's mental health at issue. However, the court considered that while Dr. Rao treated Ursitti at EGMA, he made decisions based on his knowledge of Ursitti's mental health conditions. The court observed that these decisions and certain discussions were memorialized in the records plaintiff sought to exclude. The court found that allowing Dr. Rao to review the records "better served the interests of substantial justice than prohibiting him." The court found that plaintiff had failed to present any new arguments or evidence that would compel the court to disturb its original ruling.

¶ 14     Plaintiff next filed a motion for clarification concerning the court's two orders. Plaintiff maintained, *inter alia*, that the orders were inconsistent and vague regarding the records that Dr. Rao was permitted to review and utilize in his testimony. The court granted plaintiff's motion and clarified the orders, stating that plaintiff was required to produce the unredacted mental health records of EGMA to the parties and that Dr. Rao and his experts could review and testify to Ursitti's privileged mental health information.

¶ 15     Plaintiff subsequently filed a motion for contempt of court. Plaintiff stated that she would refuse to produce the unredacted medical records, despite the court's orders. Plaintiff requested that the court therefore find her in contempt and fine her $1 so that she could appeal the court's order. The court complied, finding plaintiff in contempt for failing to produce the records. This appeal follows.

¶ 16                              II. ANALYSIS

¶ 17     On appeal, plaintiff contends that the trial court erred in ordering her to produce Ursitti's unredacted medical records and, therefore, erred in finding her in contempt for violating a discovery order. Where an individual appeals a finding of contempt for violating a discovery order, the contempt finding is final and appealable, presenting to a reviewing court the propriety of the discovery order. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002); Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Plaintiff asserts that, in entering its order, the court failed to make findings required by the Act and misinterpreted the terms of section 10(a)(3) of the Act. Plaintiff maintains that this is a medical malpractice action that does not concern Ursitti's mental health and plaintiff did not waive the protections of the Act or put Ursitti's mental health at issue. The applicability of a statutory evidentiary privilege, and any exceptions, are matters of law that we review *de novo*. *Sparger v. Yamini*, 2019 IL App (1st) 180566, ¶ 16.

¶ 18                                              A. The Act

¶ 19    The purpose of the Act "is to preserve the confidentiality of the records and communications of persons who are receiving or who have received mental-health services." *Novak v. Rathnam*, 106 Ill. 2d 478, 483 (1985). The Act generally prohibits the disclosure of such information (*Laurent v. Brelji*, 74 Ill. App. 3d 214, 216 (1979)), stating that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/3(a) (West 2018). A record is "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient concerning the recipient and the services provided." *Id.* § 2.

¶ 20    Section 10(a) of the Act lists exceptions to the evidentiary privilege that permit disclosure under certain circumstances. As relevant here, section 10(a)(1) provides that mental health records and communications may be disclosed in civil proceedings where the recipient introduces her mental condition as an element of her claim or defense. 740 ILCS 110/10(a)(1) (West 2018). The subsection further provides that, before permitting the introduction of such records, the court should conduct an *in camera* examination of the documentation to determine whether the information is admissible based on a variety of factors. *Id.* Similarly, section 10(a)(2) provides for the admission of otherwise privileged mental health records after the death of the recipient where the "recipient's physical or mental condition has been introduced as an element of a claim or defense by any party claiming or defending through or as a beneficiary of the recipient." 740 ILCS 110/10(a)(2) (West 2018). Section 10(a)(2) likewise directs the court to conduct an *in camera* examination of the records prior to admission. *Id.*

¶ 21    Next, section 10(a)(3) provides:

"In the event of a claim made or an action filed by a recipient, or, following the recipient's death, by any party claiming as a beneficiary of the recipient for injury caused in the course of providing services to such recipient, the *therapist and other persons whose actions are alleged to have been the cause of injury may disclose pertinent records and communications to an attorney or attorneys engaged to render advice about and to provide representation in connection with such matter* and to persons working under the supervision of such attorney or attorneys, and may testify as to such records or communication in any administrative, judicial or discovery proceeding for the purpose of preparing and presenting a defense against such claim or action." (Emphasis added.) 740 ILCS 110/10(a)(3) (West 2018).

¶ 22 Plaintiff contends that Ursitti's medical records may not be disclosed under sections 10(a)(1) or 10(a)(2) because plaintiff did not place Ursitti's mental health "at issue" by introducing her mental health as part of an element of her claim. Defendants contend, however, that Ursitti's mental health records are admissible under section 10(a)(3) because plaintiff is alleging that defendants' actions caused Ursitti's injuries and they should be permitted to testify to such records in order to present a defense to plaintiff's claims. Plaintiff responds that section 10(a)(3) applies only where the plaintiff's claims are based on mental health services, which is not the case here.

¶ 23        B. Finding That Disclosure Was Warranted Was Premature

¶ 24 As an initial matter, we must determine whether Dr. Rao is considered a "therapist" under the Act, which defines a "therapist" as "a psychiatrist, *physician*, psychologist, social worker, or nurse providing mental health or developmental disabilities services or any other person not prohibited by law from providing such services or from holding himself out as a therapist if the recipient reasonably believes that such person is permitted to do so." (Emphasis added.) 740 ILCS

110/2 (West 2018). According to mostly handwritten doctors' notes in the sealed record, Elk Grove Medical Associates treated Ursitti for mental health issues, primarily anxiety and depression, from May 2008 to December 2016. Depression and anxiety were almost always listed among her diagnoses in doctors' notes; however, it is not clear who initially made those diagnoses.

¶ 25 Ursitti was first treated by Dr. Kaddour and, starting in October 2014, by Dr. Rao. Doctors monitored her symptoms at regular visits, referred her to a Dr. D'Agostino for a psychiatric evaluation, and entered orders regarding her mental health medication. It is not clear who initially prescribed that medication, but Elk Grove Medical doctors appear to have authorized refills for it. During this time, Ursitti took Alprazolam/Xanax, Cymbalta, and Lexapro to treat her anxiety and depression.

¶ 26 At her deposition, Ursitti's daughter, Debra MacKenna, testified that she reported her mother's memory lapses and cognitive issues to Dr. Rao in late 2014. MacKenna was concerned about her mother's memory in 2016 as well. MacKenna acknowledged that her mother had a history of anxiety, but denied she had a history of depression.

¶ 27 We do not have the benefit of Dr. Rao being deposed. The record, as it stands, is limited because the parties were at the very beginning of discovery. The statute provides very broad guidelines in determining if a physician would qualify as a therapist. Was Dr. Rao treating the mental conditions or merely noting the medications in his logs? If Dr. Rao can establish that he was a *therapist*, the next question to be answered is whether the circuit court erred in ordering the production of Ursitti's mental health records because Ursitti's complaint never placed her mental health at issue.

¶ 28 Plaintiff contends that the court, therefore, erred in ordering her to produce Ursitti's unredacted mental health records because the records are privileged from disclosure. Plaintiff

asserts that the court erred in finding that defendants could place Ursitti's mental condition at issue by arguing that the records were part of their defense. From the limited record, Dr. Rao practices at a clinic that specialized in lung issues. Plaintiff was there presumably seeking treatment for lung issues. Nowhere in the 18-count complaint do the allegations even remotely touch upon any mental health conditions, and we fail to see how Ursitti's purported depression and anxiety would impact a failure to diagnose lung cancer. As a result, we agree with plaintiff and find that, based on the record as it stands at this juncture, the court erred in ordering plaintiff to produce the unredacted medical records and in finding that defendants could testify regarding the records.

¶ 29    We find the supreme court's ruling in *Reda*, 199 Ill. 2d 47, compelling. In *Reda*, one of the plaintiffs was admitted to the hospital and underwent surgery for a knee replacement. *Id.* at 50. The plaintiff developed acute thrombosis in his right leg and also suffered neurological damage. *Id.* at 50, 51, 58. The plaintiff alleged that the defendant doctors failed to timely diagnose and treat his worsening condition. *Id.* at 50. During discovery, defendants requested treatment records from the plaintiff's doctor. *Id.* at 51. The doctor refused, explaining that the plaintiff had not authorized their release. *Id.* The plaintiffs objected to the defendants' discovery request, citing the "mental-health-therapist-patient privilege" under the Act. *Id.* The trial court initially denied the defendants' motion to compel plaintiffs to produce the psychiatric records but, after reviewing the plaintiffs' deposition testimony and an *in camera* examination of the records, the court ordered plaintiffs to disclose the psychiatric records to the defendants. *Id.* at 53. The plaintiffs' counsel refused to comply with the order and was held in civil contempt. *Id.*

¶ 30    On appeal, this court affirmed the circuit court's judgment, finding that the plaintiffs had placed mental condition at issue in the litigation. *Id.* The supreme court reversed, however, finding that the plaintiff had not introduced his mental condition as an element of his medical malpractice

claim and, therefore, had not waived the statutory privilege under the Act. *Id.* at 58, 63. The court found that the plaintiff did not place his mental condition at issue simply by alleging that he suffered neurological damage. *Id.* at 58. The court cautioned that, if a defendant were permitted to directly implicate psychological damage in cases involving neurological injury, then "in every case in which the plaintiff claimed damages stemming from a physical injury to the brain, the door to discovery of the plaintiff's mental-health records would automatically open, and the limited exception in section 10(a)(1) of the Act would effectively eviscerate the privilege." *Id.*

¶ 31    The court observed that the defendants argued that the psychiatric records related to causation, but the court found that relevancy was not decisive in the determination of whether a plaintiff had introduced his mental condition as an element of the claim. *Id.* at 59. The court found that it was insufficient that the defendants, under their theory of the case, placed the plaintiff's mental condition at issue. *Id.* The court acknowledged that the defendants could be denied access to information that could benefit their defense, but any " 'unfairness' " that would result to defendants "is the same that is present any time a privilege against disclosure is exercised." *Id.* The court observed that evidentiary privileges are generally " 'not designed to promote the truth-seeking process, but rather to protect some outside interest other than the ascertainment of truth at trial.' " (Internal quotation marks omitted.) *Id.* (quoting *Norskog v. Pfiel*, 197 Ill. 2d 60, 83 (2001)). The court concluded that the plaintiff had not affirmatively waived his protections under the Act and reversed the trial court's ruling. *Id.* at 59, 63.

¶ 32    We find the same analysis applies in this case.[1] Here, plaintiff's claims do not concern Ursitti's mental health. Plaintiff's claims are solely based on defendants' failure to timely diagnose Ursitti's lung cancer by, *inter alia*, failing to order chest X-rays and CT scans. Because plaintiff's claims do not put Ursitti's mental condition "at issue," defendants are not permitted to disclose or testify to Ursitti's mental health records. As the supreme court explained in *Reda*, defendants cannot circumvent the protections of the Act by arguing that the mental health records are relevant to their defense. *Id.* at 59. In essence, defendants may not put Ursitti's mental health "at issue" where plaintiff's claims do not do so. Any "unfairness" that would result to defendants by denying them access to Ursitti's mental health records, must give way to the privilege created by the Act. *Id.*

¶ 33    Defendants nonetheless contend that they should be permitted to testify to Ursitti's mental health records, based on the exception in section 10(a)(3). As discussed, that subsection allows a provider of "services" to disclose and testify to pertinent records in preparing and presenting a defense where the recipient of the services alleges that their injuries have been caused by the therapist "in the course of providing services to such recipient." 740 ILCS 110/10(a)(3) (West 2018). Defendants maintain that the alleged injuries in this case occurred "in the course" of Dr. Rao providing services to Ursitti; therefore, Dr. Rao is permitted to disclose and testify to pertinent records in order to present his defense to plaintiff's claims.

---

[1]We note that the court in *Reda* analyzed the plaintiffs' contentions under section 10(a)(1) of the Act, which concerns claims made by a recipient of mental health services while the recipient is alive. In this case, the recipient of the mental health services, Ursitti, is not alive. Thus, section 10(a)(2) is applicable. However, both sections contain substantially the same language, with the only distinction being whether the recipient is alive or dead. Section 10(a)(1) contains some additional considerations based on that fact, such as whether the recipient is seeking damages for pain and suffering. Accordingly, we find that the analysis under either section is the same.

¶ 34    As noted, the record as it stands does not definitely tell us one way or the other if Dr. Rao is considered a therapist under the definitions in the Act. We also find the record insufficient to determine if the treatment he provided to Ursitti would qualify as "services." The word "services" as used in section 10(a)(3) is also a defined term under the Act. The definitions section of the Act provides that " 'Mental health or developmental disabilities services' or 'services' includes but is not limited to examination, diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habilitation or rehabilitation." 740 ILCS 110/2 (West 2018). Thus, under the Act, "services" is synonymous with "[m]ental health or developmental disabilities services." With this in mind, the exception in section 10(a)(3) is not as broad as defendants suggest.

¶ 35    Under defendants' interpretation of the exception in section 10(a)(3), a plaintiff risks waiving the privileges of the Act and putting their mental health records at issue any time they bring suit against their "therapist" and the injury occurred "in the course" of the therapist's provision of any healthcare services to the recipient, not just mental health services. Such a result is clearly not contemplated by the terms of the statute. The supreme court's ruling in *Reda* makes clear that the privilege under the statute is significant and will not yield even where the result is "unfair" to the defendants. As such, it is clear that the exception in section 10(a)(3) is intended to apply only where a plaintiff files suit against a therapist for a psychological injury that occurred in the course of the therapist's provision of "mental health or developmental disabilities services."

¶ 36    Defendants assert that this interpretation of section 10(a)(3) would essentially be a restatement of sections 10(a)(1) and 10(a)(2) and render the remainder of the exceptions in section 10(a) meaningless because it would amount to a restriction of disclosure only when a plaintiff places her mental condition at issue. However, the exceptions in subsections (a)(1) and (a)(2) have requirements that subsection (a)(3) does not. For example, both subsection (a)(1) and (a)(2) require

the trial court to conduct an *in camera* examination of the evidence and make certain findings, such as whether the evidence is relevant and probative and whether disclosure is more important to the interests of substantial justice than protection from any injury that disclosure is likely to cause. No such requirements are present in section 10(a)(3). We observe that the trial court in this case did conduct an *in camera* review of the evidence, but did not make any of the required findings on the record. Nonetheless, we find no inconsistencies created by our interpretation of section 10(a)(3).

¶ 37 We find defendants' reliance on *Doe v. McKay*, 183 Ill. 2d 272 (1998), and *Deprizio v. MacNeal Memorial Hospital Ass'n*, 2014 IL App (1st) 123206, unpersuasive. These cases were originally cited by plaintiff in her brief in support of her contentions on appeal, but defendants maintain that these rulings actually support their interpretation of section 10(a)(3). In *Doe*, the defendant psychologist treated the plaintiff's daughter. *Doe*, 183 Ill. 2d at 274. The plaintiff alleged that the defendant induced plaintiff's daughter into falsely believing that the plaintiff had sexually abused his daughter when she was a child. *Id.* The defendant psychologist told both the plaintiff and his daughter that they had repressed the memories of the abuse. *Id.* at 275. The trial court dismissed the plaintiff's claims of negligence, finding that the psychologist did not owe a duty to the plaintiff. *Id.* at 277.

¶ 38 The supreme court affirmed, finding that expanding a therapist's duty of care to "nonpatient third parties" would result in "competing demands" and divided loyalties that could negatively affect the therapist's treatment decisions. *Id.* at 282. The *Doe* court also recognized that expanding a therapist's duty of care to nonpatient third parties could negatively impact "the duty of confidentiality that every therapist owes to his or her patients." *Id.* The court noted that

communications between a therapist and a patient are privileged and "subject to disclosure only in a limited range of circumstances," such as cases where the patient sues the therapist. *Id.* at 283.

¶ 39 In further discussing the Act, the court observed that the plaintiff's daughter could bring her own malpractice action against the defendant therapist. *Id.* at 287. The court noted, however, that, in doing so, she would place her own treatment at issue and waive the protections of the Act. *Id.* The court stated, citing section 10(a)(3) of the Act, that, in such a case, the confidentiality concerns of the Act would no longer restrict the therapist in defending the action. *Id.*

¶ 40 The *dicta* in *Doe* that defendants assert supports their interpretation of section 10(a)(3) presents a scenario that is distinguishable from the case at bar. First, the *Doe* court explicitly addressed a situation where the claims of the plaintiff's daughter would place her mental condition "at issue," which would implicate the exception in section 10(a)(1). The *Doe* court was also discussing a situation where the plaintiff's daughter, as a recipient of mental health services, brought a malpractice action against a therapist that was based on the therapist's allegedly negligent conduct that occurred through the provision of those mental health services. This is precisely the type of claim that section 10(a)(3) was drafted to address. By contrast, as discussed, in this case, plaintiff's malpractice claim does not concern Dr. Rao's provision of mental health services to Ursitti, but solely concerns his failure to diagnose Ursitti's lung cancer.

¶ 41 This court's ruling in *Deprizio* is similarly distinguishable. In *Deprizio*, the plaintiff alleged that she suffered from a lithium overdose and filed suit against the defendant hospital and doctors. *Deprizio*, 2014 IL App (1st) 123206, ¶ 3. One of the doctors filed a motion to compel production of records regarding the plaintiff's psychological care in the decades leading up to her injury. *Id.* The plaintiff refused and claimed that the information was protected by the Act. *Id.* The court denied the motion to compel in part but granted it in part, ordering the production of records

pertaining to the plaintiff's prescriptions, levels, and reactions to lithium, and the plaintiff's mental health records from a defendant doctor, Dr. Humaira Saiyed, who treated the plaintiff after her alleged injury. *Id.* This court affirmed the disclosure on appeal. *Id.* ¶ 4. (See *Deprizio v. MacNeal Memorial Hospital Ass'n*, No. 1-06-2909 (Sept. 19, 2008) (unpublished order under Illinois Supreme Court Rule 23)).

¶ 42    On remand, the plaintiff filed supplemental disclosures from three expert witnesses. *Deprizio*, 2014 IL App (1st) 123206, ¶ 5. Based on the disclosures submitted by the experts, the defendants filed a motion to compel the production of all of the plaintiff's mental health records. *Id.* ¶ 8. The trial court found that the plaintiff had introduced her mental state as an element of her claim and conducted an *in camera* examination of all of the plaintiff's psychiatric records. *Id.* ¶ 9. The court subsequently ordered the plaintiff to produce various records. *Id.* The plaintiff's attorney was found in contempt for failing to produce the records and plaintiff appealed. *Id.* ¶ 10.

¶ 43    On appeal, the court first determined whether the plaintiff waived her privileges under the Act. *Id.* ¶ 14. As relevant here, the court first discussed its holding in the prior appeal in addressing the plaintiff's contention that the law of the case doctrine prevented relitigation of this issue. *Id.* ¶¶ 19-21. The court stated that it permitted disclosure of the plaintiff's lithium dosages and reactions because those records were relevant to determine whether lithium toxicity caused her injuries. *Id.* ¶ 20. The court further stated that it affirmed the disclosure of the treatment records of Dr. Saiyed because the statute allowed Dr. Saiyed to use her records in her own defense. *Id.* ¶ 21.

¶ 44    Defendants maintain that, just like Dr. Saiyed in *Deprizio*, defendants here should be permitted to use their own records in their defense pursuant to section 10(a)(3). However, there is one key distinction that was presented in *Deprizio* that is not present in the case at bar. In *Deprizio*, the plaintiff's complaint was based on a lithium overdose, which placed " 'squarely at issue the

amount of Lithium used to treat Plaintiff's *psychiatric condition*.' " (Emphasis added.) *Id.* ¶ 20 (quoting *Deprizio*, No. 1-06-2909). The lithium dosages in *Deprizio* were used to treat the plaintiff's mental health condition. Accordingly, the plaintiff's claims both placed her mental condition at issue—triggering the exception in section 10(a)(1)—and concerned a claim for a mental health-related injury that was alleged to have been caused by the defendant in the course of providing mental health services—which triggered the exception in section 10(a)(3). As discussed, plaintiff's claims in the case at bar do not concern the negligent provision of mental health treatment. As such, we find the reasoning in *Deprizio* inapplicable in this case.

¶ 45                            C. Fundamental Fairness

¶ 46    Defendants nonetheless contend that Dr. Rao should be permitted to review and testify to Ursitti's mental health records under the doctrine of fundamental fairness. This exception to the privilege in the Act was articulated by the supreme court in *D.C. v. S.A.*, 178 Ill. 2d 551 (1997). In *D.C.*, the plaintiff was a pedestrian who claimed that a driver negligently struck him as he crossed a street. *Id.* at 554. There was some suggestion in the plaintiff's medical records that he was attempting to commit suicide at the time of the accident. *Id.* at 555. The trial court ordered a limited disclosure of the plaintiff's mental health records, and the supreme court affirmed. *Id.* at 556-57, 559. The supreme court acknowledged that the plaintiff did not introduce his mental condition as an element of his claim under section 10(a)(1), but the court nevertheless determined that disclosure was appropriate in this case because the "interests of justice demand that we tip the balance in favor of disclosure and truth." *Id.* at 570. The court emphasized that its decision was "narrow" and that, under the facts of this particular case,

> "the interests of fundamental fairness and substantial justice outweigh the protections
> afforded the therapist-recipient relationship where plaintiff seeks to utilize those

protections as a sword rather than a shield to prevent disclosure of relevant, probative, admissible, and not unduly prejudicial evidence that has the potential to fully negate the claim plaintiff asserted against defendants and absolve them of liability." *Id.*

¶ 47    The supreme court revisited this exception in *Norskog* and *Reda*, stating that the exception should apply only where the plaintiff is invoking the privilege under the Act to "exploit or subvert the legal process." *Reda*, 199 Ill. 2d at 61. Indeed, to invoke the fundamental fairness exception, the case must present "truly extraordinary circumstances." *Norskog*, 197 Ill. 2d at 85.

¶ 48    We find that the circumstances presented in this case do not present the "truly extraordinary circumstances" necessary to apply the fundamental fairness exception to the privileges of the Act. There is no indication in the record that plaintiff is attempting to "exploit or subvert the legal process" or that plaintiff is using the protections of the Act as a sword, rather than a shield, to prevent the defendants' discovery of otherwise admissible evidence that has the potential to "fully negate" the claim the plaintiff asserted against the defendants. Despite defendants' assertion to the contrary, this finding would not prevent Dr. Rao from reviewing any of his own treatment records but would only prevent Dr. Rao from reviewing and testifying to those records related to Ursitti's mental health treatment. Accordingly, we find that the fundamental fairness exception does not apply in this case.

¶ 49    Defendants have not made the necessary showing to bring these records within the narrow exceptions provided in either section 10(a)(2) or 10(a)(3) of the Act. This ruling is without prejudice. If defendant can show he was actually treating Ursitti for her mental health issues, and/or that somehow her mental health issues precluded him from ordering tests for lung cancer, then he may attempt to assert the exception to the privilege. There has been no showing of this to date.

¶ 50    We therefore find that the trial court erred in ordering plaintiff to produce Ursitti's unredacted mental health records and in finding that Dr. Rao, and his experts, could review and testify to those records. Further, we reverse the contempt finding against plaintiff. See *Reda*, 199 Ill. 2d at 63 (" 'where the trial court's discovery order is invalid, a contempt judgment for failure to comply with the discovery order must be reversed' " (quoting *In re Marriage of Bonneau*, 294 Ill. App. 3d 720, 723 (1998))).

¶ 51                                        III. CONCLUSION

¶ 52    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County, vacate the finding of contempt, and remand for further proceedings consistent with this order.

¶ 53    Reversed in part and vacated in part; cause remanded.

*MacKenna v. Pantano*, 2023 IL App (1st) 210486

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-004425; the Hon. Christopher E. Lawler, Judge, presiding. |
| **Attorneys for Appellant:** | Patricia E. Raymond, Clark M. Raymond, Robert L. Raymond, Timothy R. Borchardt, and Paul W. Ryan, of Raymond & Raymond, Ltd., of Schaumburg, for appellant. |
| **Attorneys for Appellee:** | Amy L. Garland and Sean B. Mascarenhas, of Kominiarek, Bresler, Harvick & Gudmundson, LLC, and Karen Kies DeGrand and Laura Coffey Ieremia, of Donohue Brown Mathewson & Smyth LLC, both of Chicago, for appellees. |